EXHIBIT 2

TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER™

# STUDENT HANDBOOK

## CODE OF PROFESSIONAL CONDUCT

2024-2025

# TEXAS TECH UNIVERSITY HEALTH SCIENCES CENTER STUDENT HANDBOOK

## CODE OF PROFESSIONAL CONDUCT

## 2024 – 2025

GRADUATE SCHOOL OF BIOMEDICAL SCIENCES

SCHOOL OF HEALTH PROFESSIONS

SCHOOL OF MEDICINE

SCHOOL OF NURSING

JERRY H. HODGE SCHOOL OF PHARMACY

JULIA JONES MATTHEWS SCHOOL OF POPULATION AND PUBLIC HEALTH

Revised 01/10/2024

# TABLE OF CONTENTS

**STATEMENT OF ACCREDITATION** .......... 1

**PART I. FOREWORD**

**A. GENERAL POLICY** .......... 1

**B. TOBACCO-FREE ENVIRONMENT** .......... 1

**C. AUTHORITY** .......... 2

**E. UNIVERSITY NAME, DOCUMENTS, AND RECORDS** .......... 2

**F. DEFINITIONS** .......... 2

**PART II. CODE OF PROFESSIONAL CONDUCT ("STUDENT CODE")**

**A. GENERAL POLICY** .......... 6

**B. DISCIPLINARY JURISDICTION** .......... 6

**C. VIOLATION OF LAW AND TTUHSC DISCIPLINE** .......... 6

**D. MISCONDUCT** .......... 7

1. Alcohol .......... 7
2. Narcotics or Drugs .......... 7
3. Firearms, Weapons, and Explosives .......... 7
4. Theft, Damage, or Unauthorized Use .......... 7
5. Actions Against Members of the University Community .......... 8
6. Gambling, Wagering, or Bookmarking .......... 8
7. Hazing .......... 8
8. False Alarms or Terrorist Threats .......... 9
9. Financial Irresponsibility .......... 9
10. Unauthorized Entry, Possession, or Use .......... 9
11. Traffic and Parking .......... 9
12. Failure to Comply with Reasonable Directions or Requests of University Official .......... 9
13. Failure to Present Student Identification .......... 10
14. Abuse, Misuse, or Theft of University Computer Data, Programs, Time, Computer, or Network Equipment .......... 10
15. Providing False Information or Misuse of Records .......... 10
16. Skateboard, Roller Blades, or Similar Devices .......... 10
17. Academic Misconduct .......... 10
18. Violation of Published University Policies, Rules, or Regulations .......... 12
19. Violation of Federal, State, and/or Local Laws .......... 12
20. Abuse of the Discipline System .......... 12

**E. OTHER PROFESSIONAL AND ETHICAL SCHOOL STANDARDS** .......... 13

Graduate School of Biomedical Sciences .......... 13
School of Medicine .......... 13

School of Nursing ........ 13
JERRY H. HODGE SCHOOL OF PHARMACY ........ 13
School of Health Professions ........ 13
JULIA JONES MATTHEWS SCHOOL OF POPULATION AND PUBLIC HEALTH ........ 14

**F. DISCIPLINARY PROCEDURES ........ 14**

1. Nature of the Proceedings ........ 15
2. Procedural Deviations ........ 15
3. Filing a Complaint ........ 15
4. Student Conduct Board Hearings ........ 16

**G. SANCTIONS ........ 18**

**H. INTERPRETATION AND REVISION ........ 19**

**PART III: WITHDRAWAL OF CONSENT**

**A. INTERIM ACTIONS ........ 21**

1. NO CONTACT ORDER ........ 21
2. Immediate Temporary Suspension ........ 22
3. OTHER INTERIM ACTIONS ........ 22

**B. RECOMMENDATION TO WITHDRAW CONSENT DURING PERIODS OF DISRUPTION ........ 23**

1. Recommendation to Withdraw ........ 23
2. Concurrence By dean ........ 23
3. Confirmation by Provost ........ 24
4. hearing ........ 24

**PART IV: ANTI-DISCRIMINATION AND SEXUAL MISCONDUCT POLICY AND PROCEDURES (INCLUDING TITLE IX)**

**A. INTRODUCTION ........ 25**

**B. NON-DISCRIMINATION AND ANTI-HARASSMENT POLICY ........ 26**

**C. SEXUAL MISCONDUCT ........ 26**

1. Separate Policies for Title IX Sexual Misconduct and non- Title IX Sexual Misconduct ........ 27
2. Title IX Sexual misconduct ........ 28
3. non Title IX Sexual Misconduct ........ 28
4. Employees are mandatory reports ........ 28
5. making a report ........ 29
6. Confidentiality ........ 29
7. Interim and Supportive Measures ........ 31

8. Student Rights and Responsibilities ........ 32
9.Amnesty ........ 33
10. Interference with an Investigation ........ 33
11.Retaliation and False Information ........ 33
**D. GRIEVANCE PROCESS FOR NON-TITLE IX SEXUAL MISCONDUCT........34**
1. Intake and Initial Inquiry ........ 34
2. Filing a Formal Complain........ 35
3. Review of Formal complaints ........ 35
4. Investigation Process ........ 36
5. Resolution Process........ 37
6. Sanctions ........ 38
7. Appeal Procedures........ 39
**E. NON-TITLE IX SEXUAL MISCONDUCT HEARING PROCEDURE**
1. Prehearing/Formal Allegations Assigned ........ 41
2. hearing........41
**F. PREGNANCY........42**
## PART V: STUDENT RECORDS
**A. GENERAL POLICY ........42**
**B. ADDRESS OF RECORD ........42**
**C. STUDENT ACCESS TO EDUCATIONAL RECORDS........42**
**D. RECORDS NOT ACCESSIBLE TO STUDENTS........43**
**E. DISCLOSURE OF EDUCATIONAL RECORDS ........44**
**F. STUDENT'S REQUEST TO AMEND RECORDS........45**
**G. RELEASE OF STUDENT DIRECTORY INFORMATION ........46**
**H. DESTRUCTION OF RECORDS........48**
**I. LETTERS OF RECOMMENDATION ........48**
**J. MEDICAL RECORDS........48**
## PART VI. REGISTRATION OF STUDENT ORGANIZATIONS
**A. CONDITIONS FOR REGISTRATION ........49**
**B. FACULTY OR STAFF ADVISOR ........50**
**C. CONDITIONS FOR MAINTAINING REGISTRATION ........50**
**D. DENIAL OF REGISTRATION........51**

PART VII. USE OF UNIVERSITY SPACE, FACILITIES, AND AMPLIFICATION EQUIPMENT

**A. EXPRESSIVE ACTIVITIES ............ 51**

**B. OTHER USES OF TTUHSC SPACE AND ACTIVITIES ............ 51**

PART VIII. SOLICITATIONS, ADVERTISEMENTS, AND PRINTED MATERIALS ............ 52

PART IX. STUDENT TRAVEL POLICY

**A. STUDENT TRAVEL POLICY ............ 52**

PART X. MISCELLANEOUS POLICIES

**A. MISCELLANEOUS POLICIES ............ 52**

1. Absences ............ 53
2. Academic Requirements ............ 53
3. Admissions and Applicants ............ 53
4. Adding and Dropping a Course ............ 53
5. Affiliation ............ 53
6. Attendance ............ 54
7. Bacterial Meningitis ............ 54
8. Immunizations ............ 55
9. Tuberculosis Surveillance ............ 55
10. Exposure Management ............ 55
11. Working with Affiliated Entities - Student Drug Screenings ............ 56
12. Credit by Exam ............ 58
13. Disabilities (Students) ............ 58
14. Discrimination/Equal opportunity ............ 58
15. Employment Grievance ............ 59
16. Exams ............ 59
17. Financial Policies ............ 59
18. Grades/Grading ............ 59
19. Graduation procedures ............ 60
20. Medical Services Fee and Student Health Insurance ............ 60
21. Interprofessional Education ............ 61
22. international programs for students ............ 61
23. notification of student death ............ 62
24. program of assistance for students ............ 62
25. Registration ............ 62
26. Religious Holy Days ............ 63
27. Remote examinations ............ 63
28. Sexual Harassment Policy ............ 63
29. simulation program ............ 64
30. state residency classification ............ 64
31. student emergency contact information ............ 64
32. tuition and fees installment payment options ............ 64
33. tuition and fees refund policies ............ 65
34. veterans resource center ............ 67

PART XI. STUDENT COMPLAINT/GRIEVANCE POLICIES AND PROCEDURES

**A. GENERAL OR ACADEMIC MISCONDUCT OF A STUDENT ...... 67**

**B. DISCRIMINATION ...... 66**

**C. STUDENT RECORDS ...... 66**

**D. TTUHSC EMPLOYMENT ...... 66**

**E. GRADES/GRADING ...... 67**

**F. OTHER TYPES OF MISTREATMENT ...... 67**

**G. OTHER INSTITUTIONAL-LEVEL STUDENT COMPLAINT PROCEDURES ...... 69**

1. Early Resolution ...... 69
2. Filing a Hearing Request ...... 69
3. Hearing Procedure ...... 70
4. Committee Decision ...... 70
5. complaint forms ...... 70

**PART XII. CONTACT INFORMATION FOR KEY PERSONNEL ...... 71**

## Statement of Accreditation

The Texas Tech University Health Sciences Center is accredited by the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC) to award baccalaureate, masters, doctoral, and professional degrees. Texas Tech University Health Sciences Center also may offer credentials such as certificates and diplomas at approved degree levels. Questions about the accreditation of Texas Tech University Health Sciences Center may be directed in writing to the Southern Association of Colleges and Schools Commission on Colleges at 1866 Southern Lane, Decatur, GA 30033-4097, by calling (404) 679-4500, or by using information available on SACSCOC's website (www.sacscoc.org).

# PART I. FOREWORD

## A. General Policy

As a comprehensive health sciences center, the Texas Tech University Health Sciences Center's (TTUHSC) mission is to enrich the lives of others by educating students to become collaborative healthcare professionals, providing excellent patient care, and advancing knowledge through innovative research.

TTUHSC's strategic plan can be viewed at the following link: https://www.ttuhsc.edu/administration/strategic-plan.aspx

A university, like any community, must have regulations and/or standards by which its members abide and procedures by which its components function. The standards should provide order and an atmosphere conducive to intellectual and personal development. This Student Handbook, TTUHSC Operating Policies and Procedures, and the individual School's catalogs/handbooks are intended to serve these purposes in the interest of all components of the TTUHSC.

The TTUHSC has a responsibility to maintain order within the university community and to discipline those who violate its standards, rules, and/or policies. Enrollment requires students to share this responsibility. Students agree to abide by the standards, rules and policies set forth in this Student Handbook, the TTUHSC Operating Policies and Procedures, the individual Schools' catalogs/handbooks, and any other official University publications. Registered student organizations must also follow these standards, rules and policies.

The Texas Tech University Health Sciences Center reserves the right to change, modify, amend, or rescind, in whole or in part, the Student Handbook at any time without prior notice. The most recent Handbook supersedes all previous editions. See updates at www.ttuhsc.edu/student-affairs. The provisions of the Handbook do not constitute a contract, express or implied, between any student or faculty member and Texas Tech University System, TTUHSC, or the TTUHSC School of Medicine, School of Health Professions, Jerry H. Hodge School of Pharmacy, School of Nursing, Julia Jones Matthews School of Population and Public Health, or the Graduate School of Biomedical Sciences.

## B. Tobacco-Free Environment

As a health care institution, TTUHSC is committed to the establishment and enforcement of a tobacco-free environment. TTUHSC OP 10.19, Tobacco-Free Environment Policy, includes regulation and assessment.

According to the United States Surgeon General, tobacco use is the single largest preventable cause of premature death and disability. Tobacco users are at substantially increased risk for a number of cancers, cardiovascular disease, and lung disease. Environmental smoke can cause discomfort and disease in non-smokers. Institutions with smokers suffer from lost productivity, conflict, and plant deterioration.

## C. Authority

The authority to enact and enforce regulations of the University is vested in the Texas Tech University System Board of Regents. The responsibility for enforcing regulations and imposing penalties is delegated to the Chancellor and/or the President of the University and any University official(s) the President designates. The Office of the Provost, in coordination with the Office of Student Affairs, is the principal designee for the administration of student conduct.

All references to the Chancellor and/or President of the University, the Provost or their designee shall be interpreted to include persons designated to act on behalf of these officials.

## D. Policy on Non-Discrimination

The University brings together, in common pursuit of its educational goals, persons of many backgrounds and experiences. The University is committed to the principle that in no aspect of its programs shall there be differences in the treatment of persons because of sex, including pregnancy, race, color, religion, national origin, age, disability, genetic information, status as a protected veteran, or any other legally protected category class or characteristic, and that equal opportunity and access to facilities shall be available to all. The University is committed to providing educational programs, activities, facilities, or ser- vices that are free of unlawful discrimination. For more information, see TTUHSC OP 51.01, Equal Employment Opportunity Policy and Affirmative Action Program and TTUHSC OP 51.02, Non-Discrimination and Anti- Harassment Policy, and Part IV of the Student Handbook below.

## E. University Name, Documents, and Records

The use by any person or organization of the University's name, in connection with any program or activity, without the prior written permission of the Office of the Vice Chancellor for Institutional Advancement, or any unauthorized use of University documents, records or seal is prohibited. See TTUHSC OP 67.01, *Publication Guidelines*.

## F. Definitions

1. "Accused" is any student accused of violating the TTUHSC Code of Professional Conduct set forth in Part II of this Handbook. This term may also mean an accused registered student organization. If a registered student organization is alleged to have violated the Student Code, only one student from the organization may appear or act on behalf of the student organization (such as appearing before a Student Conduct Board or Student Conduct Administrator) for purposes of the Student Code.

2. "Business Day" is a day in which the University normally carries on business or business operations, but excludes weekends and official University holidays.

3. "Complainant" is a member of the University community who submits a complaint alleging that a student violated the Student Code. When a student believes that he or she has been a victim of another student's misconduct, the student who believes that he or she has been a victim will have the same rights under the Student Code as are provided to the complainant, even if the victim is not acting as a complainant.

4. "Complaint of Misconduct" or "Complaint" is a formal, written charge against a student(s) or student organization(s) alleging violation(s) of the Student Code(s). An anonymous report or a report by a person who is not a member of the University community shall not constitute a complaint of misconduct. However, such report may initiate an investigation and/or filing of a complaint of misconduct by an appropriate University official.

5. "Conduct Board" – see definition for "Student Conduct Board" (item 23).

6. "Disciplinary Good Standing" is defined as relating to a student not currently on disciplinary probation; or, a student, whose disciplinary suspension, dismissal, or conditions and/or restrictions imposed, if any, have been totally fulfilled in a timely manner.

7. "Faculty member" is any person hired by the University to conduct classroom or teaching activities or who is otherwise considered by university to be a member of its faculty.

8. "Flag" is the indicator placed on a student's official record which may prevent registration and/or the issuance of a transcript until the student meets the requirements of the University office placing the indicator, as described herein and in the schools' catalogs.

9. "May" is used in the permissive sense.

10. "Member of the University Community" is any person who is an enrolled student, faculty, or staff member, University official, any other person employed by the University, volunteer (including high school students), or campus visitors.

11. "Policy" refers to the written regulations, standards, and/or rules of the University as found in, but not limited to: the TTUHSC Student Handbook; School of Nursing Handbook and catalog; School of Medicine catalog; School of Health Professions catalog; Jerry H. Hodge School of Pharmacy catalog; Julia Jones Matthews School of Population and Public Health catalog; Graduate School of Biomedical Sciences Catalog; and/or the TTUHSC operating policies.

12. "Department Chair" is the individual charged primarily with mentoring and guiding faculty, overseeing department administrative support, and serving as an interface between faculty and the administration of the School and TTUHSC. Matters of student misconduct and academic deficiency that are addressed from faculty/program directors, etc. are referred to the Department Chair, and if not resolved, referred to the appropriate student conduct administrator for each school.

13. "Registered Student Organization" – see definition for "Student Organization" (item 26).

14. "Religious Holy Day" is a holy day observed by a religion whose places of worship are exempt from property taxation under Texas Tax Code § 11.20. Religious Organizations. The term "Religious Holy Day" generally means a day on which the tenets of said religion prohibit class attendance or the completion of specific assignments on designated dates. See Texas Education Code § 51.911. Religious Holy Days.

15. "Representative" is a university official authorized on a case-by-case basis by the Dean of each School to investigate and resolve alleged violations of the Code of Professional Conduct.

16. "School" refers to the School of Medicine, School of Nursing, Jerry H. Hodge School of Pharmacy, School of Health Professions, Graduate School of Biomedical Sciences, or Julia Jones Matthews School of Population and Public Health.

17. "Shall" is used in the imperative sense.

18. "Sponsorship and/or Co-Sponsorship" is defined as minimally including, but not limited to, participation in planning, coordination and implementation directed by members of the sponsoring organizations.

19. "State Law" exclusively refers to the State of Texas.

20. "Student" refers to all persons taking courses at the University, either full-time or part-time, pursing undergraduate, graduate, or professional studies, specifically excluding School of Medicine House Staff. In addition, for purposes of Part II of this Handbook, persons who withdraw or on leave of absence after an alleged violation of the Code, who are not officially enrolled for a particular term, but who have a continuing

relationship with the University, or who have been notified of their acceptance may be considered "students."

21. "Student Code" refers to the TTUHSC Code of Professional Conduct, which is set forth in Part II of this Handbook. Section D, Misconduct, applies to all students, while Section E, Other Professional and Ethical Standards, applies to students in certain TTUHSC Schools. A student must have applied for admission or be enrolled in the applicable School before a School's provisions in Section E apply to the student.

22. "Student Conduct Administrator" is the individual officially authorized by the Dean of each TTUHSC School to receive complaints and administer the School specific procedures outlined herein. The Student Conduct Administrator will provide technical assistance and support to the Student Conduct Board and may be present at the Student Conduct Board hearing, but will not be present during the Board's deliberations. In any case in which the Student Conduct Administrator is the complainant, the Dean or designee of the applicable School will appoint an alternate to serve as Student Conduct Administrator for that case. For each School, appointments are made as follows, or as otherwise determined by the Dean:

    a. Graduate School of Biomedical Sciences – Assistant Dean
    b. School of Medicine – Student Conduct Administrator
    c. School of Nursing – Assistant Dean for Student Success
    d. School of Health Professions – Associate Dean for Admissions and Student Affairs
    e. Jerry H. Hodge School of Pharmacy: Academic violations – Associate Dean for Student Affairs and Admissions; professional violations – Associate Dean for Professional Affairs.
    f. Julia Jones Matthews School of Population and Public Health – Associate Dean of Academic Affairs

23. "Student Conduct Board" or "Board" refers to persons authorized by the Dean of each School to determine whether a student has violated the Student Code and to recommend sanctions that may be imposed when a rules violation has been committed. All persons serving on the Student Conduct Board must acknowledge an ability to serve objectively and shall decline to serve if there is a conflict of interest or an appearance of a conflict of interest with either the accused or the complainant. When a person declines to serve because of a conflict of interest or appearance thereof, the Dean shall appoint another person with the same or similar faculty/student status as the person declining to serve.

    a. For the Graduate School of Biomedical Sciences, the Student Conduct Board shall be appointed by the Student Conduct Administrator as follows:
        i. One (1) Faculty member from the membership of the Graduate Council, who shall serve as Chair;
        ii. Two (2) other faculty members from the membership of the Graduate Faculty; and,
        iii. Two (2) graduate students from the school.
    b. For the School of Medicine, the Student Conduct Board shall be appointed by the Student Conduct Administrator as follows:
        i. Two (2) faculty members chosen by the Chair of the School Hearing Committee or designee;
        ii. One (1) faculty member chosen by the Chair of the Student Affairs Committee or designee; and,
        iii. Two (2) medical students, who will be chosen by the Chair of the Student Affairs Committee from a list of second, third-, and fourth-year students.
        iv. The Board will elect one (1) of the faculty members as its Chair.
    c. For the School of Nursing, the Student Conduct Board shall be appointed by the Assistant Dean for Student Success who serves as the Student Conduct Administrator. Members are as follows:
        i. One (1) tenured faculty member, who will serve as Chair;
        ii. Two (2) faculty members not directly involved with the complainant or the accused; and,
        iii. Two (2) students not directly involved with the complaint or the accused.

d. For the School of Health Professions, the Student Conduct Board shall be appointed by the Dean as follows:
    i. The Associate Dean for Admissions and Student Affairs serves as the Student Conduct Administrator and will appoint a Student Conduct Board comprised of the following:
    ii. One (1) member of the SHP Office of the Dean who will serve as Chair;
    iii. Two (2) faculty members not directly involved with the case; and
    iv. Two (2) students not directly involved with the case.

e. For the Jerry H. Hodge School of Pharmacy, the Student Conduct Board shall be the appropriate Honor Council members pursuant to the School of Pharmacy OP 77.27.

f. For the Julia Jones Matthews School of Population and Public Health, the Student Conduct Board shall be appointed by the Dean as follows:
    i. One (1) tenured faculty member, who will serve as Chair;
    ii. Two (2) faculty members not directly involved with the complainant or the accused; and
    iii. Two (2) students not directly involved with the complaint or the accused.

24. "Student Conduct Board Hearing" or "Hearing" refers to an administrative process whereby a student contests the facts upon which allegations of violations of the Student Code and/or sanctions resulting from an alleged violation(s) are based. At the hearing, information is presented to the Student Conduct Board in order to determine whether a student's responsibility related to the alleged violation of the Student Code is valid and appropriate sanctions, if any.

25. "Student Handbook" or "Handbook" refers to the TTUHSC Student Handbook.

26. "Student Organization" refers to a group of students who have joined together for a common mission, purpose, or cause, and have submitted the requirements for Texas Tech University Health Sciences Center student organization registration.

27. "University" means Texas Tech University Health Sciences Center (inclusive of all regional sites and their components) or Texas Tech University System.

28. "University Official" is any person employed by Texas Tech University System, Texas Tech University or Texas Tech University Health Sciences Center performing assigned administrative or professional responsibilities.

29. "University Premises" includes all land, buildings, facilities, and other property in the possession of, or owned, used, or controlled by the University (including adjacent streets and sidewalks).

30. "User" is any member of the University community who uses any University computing and/or networking resources.

31. "Will" is used in the imperative sense.

# PART II. CODE OF PROFESSIONAL CONDUCT ("STUDENT CODE")

## A. General Policy

1. An environment in which the privileges of citizenship are protected and the obligations of citizenship are understood fosters freedom of discussion, inquiry, and expression. Accordingly, the University has developed standards of behavior pertaining to students and student organizations.

2. Students and student organizations are subject to disciplinary action according to the provisions of the Student Code and/or any other applicable University rules or regulations.

3. Each student is responsible for becoming familiar with the various regulations of the University and meeting the various requirements outlined below. Written policies are described in university publications such as this Handbook and the Schools' individual catalogs. Each student, in accepting admission, indicates a willingness to subscribe to and be governed by the rules and regulations of university officials to take such disciplinary action, including, but not limited to, suspension, dismissal, or expulsion, as may be deemed appropriate for failure to abide by such rules and regulations.

4. Each student is responsible for their own integrity, and is likewise responsible for reporting possible violations of this Student Code by other students. Faculty and staff are also responsible for reporting violations. Failure to do so may result in disciplinary action.

## B. Disciplinary Jurisdiction

1. The Student Code shall apply to conduct that occurs on university premises, at university sponsored activities, and to off-campus conduct that adversely affects the professional and ethical standards of each school to which a student is enrolled and/or the missions of the University and/or pursuit of its objectives. On a case-by-case basis, the Dean or their designee of each respective School, in their sole discretion, shall determine whether the Student Code should be applied to conduct occurring off premises.

2. All students are expected to comply with the professional and ethical standards of each school in which they are enrolled and the TTUHSC Student Code. Such compliance shall be implicit upon accepting admission to the University. Each student shall be responsible for their conduct from the time of the application for admission through the actual awarding of a degree, even though conduct may occur before classes begin or after classes end, as well as during the academic year and during periods between terms of actual enrollment. The Student Code shall apply to persons who withdraw after alleged violation of the Code, who are not officially enrolled for a particular term but who have a continuing relationship with the University, or who have been notified of their acceptance.

## C. Violation of Law and TTUHSC Discipline

A disciplinary proceeding may be instituted against a student regardless of whether conduct allegedly violates either the criminal and/or civil law and/or this Student Code (that is, multiple violations may result from the same factual situation) without regard to the pendency or conclusion of civil litigation or criminal arrests or

charges. Proceedings under this Student Code may be carried out prior to, simultaneously with, or following civil and/or criminal proceedings at the discretion of the Dean of each School, or their designee. Determinations made or sanctions imposed under the Student Code shall not be subject to change because criminal charges arising out of the same facts giving rise to violation of university rules were dismissed, reduced, or resolved in favor of or against the criminal and/or civil law defendant.

NOTE: State law will be strictly enforced at all times on all property controlled by the University and is inclusive of all regional sites and its components.

## D. Misconduct

Any student or student organization found to have committed the following misconduct is subject to disciplinary sanctions, conditions, and/or restrictions. Misconduct or prohibited behavior includes, but is not limited to:

1. **Alcoholic Beverages**
    a. The use, possession, sale, delivery, or distribution of alcoholic beverages, except as expressly permitted by university policy or as allowed by laws of the State of Texas.
    b. Being under the influence of alcohol and/or intoxication except as allowed by law.

2. **Narcotics or Drugs**
    a. Use, possession, sale, delivery, or distribution of any narcotic, drug, or medicine prescribed to someone else, chemical compound or other controlled substance, or drug-related paraphernalia, except as expressly permitted by the laws of the State of Texas.
    b. Being under the influence of narcotics or drugs, except as permitted by law.
    c. The failure of a drug test, whether required by TTUHSC or any health care facility to which a student is assigned or has any type of patient care, contact, or responsibility.

3. **Firearms, Weapons, and Explosives.** Use or possession of firearms, ammunition, explosive weapons, illegal knives, and other deadly weapons are prohibited on university property, except as specifically authorized by federal, state, or local laws. TTUHSC OP 10.30 outlines regulations for the carrying of concealed handguns by licensed holders.

    As a health-related educational institution, TTUHSC facilitates a complex composition of activities, which include education, patient care, research, and community engagement. As such, TTUHSC campuses must accommodate the unique needs of diverse stakeholders, including patients, learners of all types, faculty, staff, contractors, and visitors. Within the context of this unique and complex composition, TTUHSC is committed to the following principles for the campus environment:
    a. TTUHSC will comply with all necessary laws and regulatory requirements regarding safety and security on its campuses;
    b. Within reasonable effort, TTUHSC will create an environment in which all stakeholders can conduct their business with a sense of personal and collective safety and security;
    c. TTUHSC will communicate safety policies to stakeholders through all appropriate means.

4. **Theft, Damage, or Unauthorized Use**
    a. Attempted or actual theft of property of the University, students, members of the University community or campus visitors.
    b. Possession of property known to be stolen or belonging to another person without the owner's permission.

c. Attempted or actual damage to property of the University, University students, members of the University community, or campus visitors.
d. Attempted or actual unauthorized use of a credit card, debit card, automated teller machine card, and/or personal check; alteration, forgery, or misrepresentation of any form of identification, including, but not limited to, a social security number or driver license number.

**5. Actions Against Members of the University Community**

a. Physical harm or threat of harm to any person.
b. Intentional or reckless conduct that endangers the health or safety of any person, including, but not limited to, a member of the University community.
c. Behavior that disrupts the normal operation of the University, including, but not limited to, a member of the University community; or conduct that otherwise interferes with or creates a hostile or intimidating environment for a member of the University community's academic pursuits or work environment. Such conduct does not necessarily have to be in violation of the law to violate this section.
d. Sexual Misconduct: Sexual Misconduct is a broad term encompassing all forms of gender-based harassment or discrimination and unwelcome behavior of a sexual nature. The term includes Sexual Harassment, Nonconsensual Sexual Contact, Nonconsensual Sexual Intercourse, Sexual Assault, Sexual Exploitation, Stalking, Public Indecency, Interpersonal Violence, sexual violence, and other misconduct based on sex.
e. Excessive pressure, threats, or any form of conduct, coercive tactics or mind control techniques used to recruit, initiate, retain or otherwise intimidate a student for membership in an organization.
f. Actions involving freedom of expression are covered in Parts VII and VIII of this Handbook and governed by O.P. 61.07, Use of TTUHSC Premises and Amplification Equipment.

**6. Gambling, Wagering, or Bookmaking**

a. Gambling, wagering, or bookmaking on university premises is prohibited.

**7. Hazing**

a. Any intentional, knowing or reckless act directed against a student, occurring on or off campus, by one or more individuals acting alone or collectively, that endangers the mental or physical health or safety of a student for the purpose of pledging or associating, being initiated into, affiliating with, holding office in, seeking, and/or maintaining membership in any organization whose members are, or include, students. Consent or acquiescence by a student or students subjected to hazing is not a defense in a disciplinary proceeding. Hazing includes, but is not limited to:
   i. Any type of physical brutality, such as whipping, beating, striking, branding, electronic shocking, placing of a harmful substance on the body, or similar activity;
   ii. Any type of physical activity, such as sleep deprivation, exposure to the elements, confinement in a small space, calisthenics, or other activity that subjects the student to an unreasonable risk of harm or that adversely affects the mental or physical health or safety of the student;
   iii. Any activity involving consumption of a food, liquid, alcoholic beverage, liquor, drug, or other substance that subjects the student to an unreasonable risk of harm or that adversely affects the mental or physical health or safety of the student;
   iv. Any activity that intimidates or threatens the student with ostracism, that subjects the student to extreme mental stress, shame, or humiliation, that adversely affects the

mental health or dignity of the student or discourages the student from entering or remaining registered in an educational institution, or that may reasonably be expected to cause a student to leave the organization or the institution rather than submit to acts described in this subdivision;

v. Any activity that induces, causes, or requires the student to perform a duty or task that involves a violation of the Penal Code;

vi. Any activity in which a person engages in, solicits, encourages, directs, aids or attempts to aid another, directly or indirectly, in hazing; intentionally, knowingly or recklessly permits hazing to occur; having firsthand knowledge of the planning of a specific hazing incident which has occurred; and fails to report the incident in writing to the specific School's student affairs office;

vii. Any activity in which hazing is either condoned or encouraged, or actions of any officer or combination of members, pledges, associates, or alumni of the organization commit or assist in the commission of hazing; or,

viii. Any act that is unlawful as designated by local, state, or federal government. See Texas Education Code, Sections 37.151-37.157 and Section 51.936.

**8. False Alarms or Terrorist Threats**

a. Intentionally or recklessly sounding a false alarm of any kind or character; making a false emergency call or terrorist threat; issuing a bomb threat; constructing mock explosive devices; improperly possessing, tampering with or destroying fire equipment, Automatic External Defibrillators (AED), or emergency signs on University premises.

**9. Financial Irresponsibility**

a. Failure to meet financial obligations owed to the University, including, but not limited to, the writing of checks on accounts with insufficient funds. See also Part II.D.4.d. above.

**10. Unauthorized Entry, Possession, or Use**

a. Unauthorized entry into or use of university facilities.

b. Unauthorized possession or duplication, processing, production, or manufacture of any key or unlocking device or access code for use in any University facility.

c. Unauthorized use of the University name, logotype, registered marks, or symbols of the University.

d. Use of the University's name to advertise or promote events or activities in a manner that suggests sponsorship by the University without prior written permission.

**11. Traffic and Parking**

a. Violation of TTUHSC Parking Services regulations.

b. Obstruction of the free flow of vehicle, pedestrian, or other traffic on university premises.

**12. Failure to Comply with Reasonable Directions or Requests of University Officials**

a. Failure to comply with the reasonable directions or requests of a university official acting in the performance of their duties.

**13. Failure to Present Student Identification**

a. The failure to present student identification to any University official upon request and identify oneself to a University official acting in the performance of their duties. The student identification card is property of the University. Students shall neither allow their student identification card to be used by other persons, nor shall they alter their student identification in any way. A student must pay a replacement charge for lost, stolen or damaged student identification cards.

14. **Abuse, Misuse or Theft of University Computer Data, Programs, Time, Computer or Network Equipment** (OP 56.01 - Acceptable Use of Information Technology Resources)

a. Unauthorized use of computing and/or networking resources.
b. Use of computing and/or networking resources for unauthorized or non-academic purposes.
c. Unauthorized accessing or copying of programs, records, or data belonging to the University or another user or copyrighted software without permission.
d. Attempted or actual breach of the security of another user's account and/or computing system, depriving another user of access to university computing and/or networking resources, compromising the privacy of another user, or disrupting the intended use of computing or network resources.
e. Attempted or actual use of the University's computing and/or networking resources for personal or financial gain.
f. Attempted or actual transport of copies of University's programs, records, or data to another person or computer without written authorization.
g. Attempted or actual destruction or modification of programs, records, or data belonging to the University or another user, or destruction of the integrity of computer-based information.
h. Attempted or actual use of the computing and/or networking facilities to interfere with the normal operation of the University's computing and/or networking systems, or through such actions, causing a waste of such resources (people, capacity, computer).
i. Allowing another person, either through one's personal computer account, or by other means, to accomplish any of the above.

**15. Providing False, Misleading, or Untrue Statements Misuse of Records**

a. Knowingly providing to the University, or a university official in the performance of their duties, either verbally, or through forgery, alteration or misuse of any University document, record, or instrument of identification.

**16. Skateboard, Roller Blades, or Similar Devices**

a. Use of skateboards, roller blades, or other similar devices in university buildings or on University premises in such a manner as to constitute a safety hazard or cause damage to University or personal property or which disrupts the normal operation of the University. Also refer to TTUHSC OP 76.32, Traffic and Parking Regulations.

**17. Academic Misconduct**

a. A student who witnesses academic misconduct or who is approached with an offer to gain unfair advantage or commit academic misconduct is obligated to report that violation to the appropriate authority (See Part II.D of this Handbook). Failure to do so may result in disciplinary action. Faculty and staff are likewise responsible for reporting academic misconduct in accordance with Part II.D.

b. "Academic misconduct" involves any activity that tends to compromise the academic integrity of the University or subvert the educational process, including, but not limited to, cheating, plagiarism, falsifying academic records, misrepresenting facts, and any act designed to give unfair academic advantage to the student or the attempt to commit such an act.

c. "Cheating" includes, but is not limited to:

   i. Using any aid, sources, and/or assistance beyond those authorized by the instructor in taking a course, laboratory, field work, quiz, test, or examination; writing papers; preparing reports; solving problems; or carrying out assignments;
   ii. Failing to comply with instructions given by the person administering the test;
   iii. Using, buying, stealing, transporting, or soliciting whole or part the contents of an examination, test key, homework solution, computer program or software, including but not limited to, Artificial Intelligence;
   iv. Seeking aid, receiving assistance from, or collaborating with another student or individual, or using software, including but not limited to Artificial Intelligence, during a course, quiz, test, examination, or in conjunction with other assignment (including, but not limited to writing papers, preparing reports, solving problems or making presentations) unless specifically authorized by the instructor;
   v. Discussing the contents of an examination with another student who will take the examination;
   vi. Divulging the contents of an examination or preserving questions for use by another, when the instructor has designated that the examination is not to be removed from the examination room, be returned to, or kept by the student;
   vii. Substituting for another person, or permitting another person to substitute for oneself, to take a course, test, or any course-related assignment;
   viii. Paying or offering money or other valuable thing to, or coercing another person to, obtain an examination, test key, homework solution, or computer program, or information about an examination, test key, homework solution, or computer program;
   ix. Falsifying research data, laboratory reports, and/or other academic work offered for credit;
   x. Taking, keeping, misplacing, or damaging the property of the University, or of another, if the student knows, or reasonably should know, that an unfair academic advantage would be gained by such conduct;
   xi. Possession, at any time, of current or previous test materials without instructor permission;
   xii. Acquisition or dissemination by any means, without written permission, of tests or other academic material belonging to a member of the University community;
   xiii. Alteration of grade records;
   xiv. Bribing, or attempting to bribe, a member of the University community or any other individual to alter a grade;
   xv. Falsification, fabrication, or dishonesty in reporting laboratory and/or research results;
   xvi. Submitting substantially the same work to satisfy requirements for one course that has been submitted in satisfaction of requirements for another course, without the written permission of the instructor of the course for which the work is being submitted.
   xvii. Possession, during an exam, test, or quiz of prohibited materials, including but not limited to study/review materials, class notes, review questions, or electronic devices.

d. "Plagiarism" includes, but is not limited to, the appropriation, buying, receiving as a gift, or obtaining by any other means another's work (such as words, ideas, expressions, illustrations, or product of another), in whole or in part, and the submission of that work as one's own work for an academic credit or requirement. When a student presents the works of another (published or unpublished) in their academic work, the student shall fully acknowledge the sources according to methods prescribed by their instructor.

e. "Falsifying academic records" includes, but is not limited to, altering or assisting in the altering, of any official record of the University and/or submitting false information or omitting requested information that is required for, or related to, any academic record of the University. Academic records include, but are not limited to, applications for admission, the awarding of a degree, grade reports, test papers, registration materials, grade change forms, and reporting forms used by the Office of the Registrar.

f. "Misrepresenting facts" to the University or an agent of the University includes, but is not limited to, providing false grades or resumes, providing false or misleading information in an effort to receive a postponement or an extension on an examination, test, quiz, or other assignment for the purpose of obtaining an academic or financial benefit for oneself or another individual, or providing false or misleading information in an effort to injure another student academically or financially.

g. For additional information related to your respective school's misconduct procedures please refer to the school's handbook.

**18. Violation of Published University Policies, Rules, or Regulations**

a. Violation of any published University policies, rules, or regulations that govern student or student organization behavior, including, but not limited to, applicable publications for each TTUHSC School, such as student handbooks, catalogs, professional and ethical standards, and course syllabus.

**19. Violation of any Provisions of Federal, State and/or Local Laws**

**20. Abuse of the Discipline System**

a. Failure by an accused to comply with or respond to a notification to appear before the Dean of their School, Dean's representative, and/or an official of the University, including, but not limited to, the Student Conduct Administrator, during any stage of a disciplinary proceeding. Failure to comply with or respond to a notice issued as part of a disciplinary procedure and/or failure to appear will not prevent the Dean, Dean's representative, and/or an official of the University from proceeding with disciplinary action;

b. Falsification, distortion, or misrepresentation of information in disciplinary proceedings.

c. Disruption or interference with the orderly conduct of a disciplinary proceeding.

d. Filing an allegation known to be without merit or cause.

e. Discouraging, or attempting to discourage, by any means, an individual's proper participation in, or use of, the discipline system.

f. Influencing, or attempting to influence, by any means, the impartiality of a member of a disciplinary body prior to and/or during the disciplinary proceeding.

g. Harm, threat of harm, or intimidation either verbally, physically, or written of a member of a disciplinary body prior to, during, and/or after disciplinary proceeding.

h. Failure to comply with the sanctions, conditions, or restrictions imposed under this Student Code.
i. Influencing or attempting to influence another person to commit an abuse of the discipline system.
j. Retaliation against any person or group who files a complaint of misconduct in accordance with the Student Code or grievance under the applicable School grievance policy.

## E. Other Professional and Ethical School Standards

In addition to the misconduct identified in Part II.D of this Handbook, each School shall prescribe professional and ethical standards in their School handbook, the violation of which may form the basis of a disciplinary action.

### Graduate School of Biomedical Sciences

All students entering the Graduate School of Biomedical Sciences are required to subscribe to the Student Handbook Code of Professional Conduct as well as the policies and standards described in the Graduate School of Biomedical Sciences Catalog. GSBS students will make every effort to embrace the Values-Based Culture with conduct that is ethical, honest, respectful, and professional to all.

### School of Medicine

All students entering the TTUHSC School of Medicine are required to subscribe to the Medical Student Honor Code, as well as the Student Code. Adherence to the Medical Student Honor Code and the Student Code is considered a requirement for admission to the School of Medicine.

### School of Nursing

All students entering into the TTUHSC School of Nursing will adhere to the ANA Code of Ethics for Nurses. The ANA Code of Ethics for Nurses serves the following purposes: it is a succinct statement of the ethical obligations and duties of every individual who enters the nursing profession. It is the profession's nonnegotiable ethical standard. The nurse owes the same duties to self as to others, including the responsibility to promote health and safety, preserve wholeness of character and integrity, maintain competence, and continue personal and professional growth. All nursing students are required to subscribe to the Student Handbook Code of Professional Conduct and embrace the Values-Based Culture; thereby, demonstrating behavior which is ethical, honest, respectful, and professional to all.

### Jerry H. Hodge School of Pharmacy

The following principles of professional conduct are established to guide pharmacists in relationships with patients, fellow practitioners, other health professionals, and the public. A Pharmacist should hold the health and safety of patients to be of first consideration and should tender to each patient the full measure of professional ability as an essential health practitioner.

### School of Health Professions

All students entering the School of Health Professions are required to subscribe to the Student Handbook Code of Professional Conduct, as well as the policies and standards described in the School of Health Professions Handbook. As a student of the School of Health Professions at the Texas Tech University Health Sciences Center, I will use my

knowledge and skills responsibly to improve the quality-of-life tor those we serve. I will seek in all academic, professional and personal endeavors to demonstrate ethical behavior, honesty, integrity and respect for others.

### Julia Jones Matthews School of Population and Public Health

All students entering the JJMSPPH are required to subscribe to the Student Handbook Code of Professional Conduct as well as the policies and standards described in the JJMSPPH Catalog. Students will make every effort to embrace the Values-Based Culture with conduct that is ethical, honest, respectful and professional to all.

## F. Disciplinary Procedures

*Academic issues, such as grading and promotion issues, should be addressed by each school's policies and procedures.*

1. Nature of Proceedings. These proceedings are part of an educational process whereby the University applies its values to establishing the best possible learning environment for its students. These proceedings are not intended to follow, or be restricted by, courtroom or judicial procedures, including the rules of evidence. In addition, these proceedings are not intended for grading and promotions issues, which should be addressed under individual School policies.

2. Procedural Deviations. If the Student Conduct Board has not yet been appointed, or in the absence of the Chair of the Student Conduct Board, the parties and the Student Conduct Administrator may agree in advance and in writing to deviations from procedure. If a Student Conduct Board has been appointed, the parties and the Chair of the Student Conduct Board may mutually agree to procedural deviations, such as deadlines for submission of evidence and hearing dates and times.

NOTE: Any notices that are sent by mail will be considered to have been received on the third calendar day after the date of mailing, excluding any intervening Saturday, Sunday or holiday.

3. Filing A Complaint
    a. Any faculty, staff, or student of TTUHSC may file a Complaint against a student or a student organization for violation of the Student Code. A preliminary investigation/discussion with a supervisor (program director, chair, etc.) must be done prior to filing a Complaint. If a basis for the Complaint exists, a student grievance should be completed and submitted at https://www.ttuhsc.edu/student-affairs/grievances.aspx by the Complainant. A Complaint shall be submitted no later than twenty (20) business days from the date of the event or when the Complainant becomes aware of the event. Complaints filed more than twenty business days after the event shall include a justification for the delay and will be accepted on a case-by-case basis as determined by the Student Conduct Administrator.
    b. When a Complaint is filed, the Student Conduct Administrator will provide the Accused with the Complaint of Misconduct filed by the Complainant and will notify the Accused in writing that he or she shall appear before the Student Conduct Administrator to discuss the Complaint within five (5) business days from the date of the letter.
    c. The Student Conduct Administrator may conduct an informal meeting to determine if the complaint may be disposed of prior to a formal hearing. Any informal disposition must be in writing and agreed to by all of the parties. Such disposition shall be final and there shall be no subsequent proceedings. The Student Conduct Administrator will send a written notification of the resolution to all parties involved.

d. If the Complaint is not disposed of administratively under Part II.F.3.c above, the Student Conduct Administrator will meet with the Accused to determine if the Accused admits or denies violating institutional rules.
    i. If the Accused admits violating institutional rules, but does not agree to sanctions, a Student Conduct Board Hearing shall be conducted in accordance with Part II.F.4, but shall be limited to recommending the appropriate sanctions Part II.G.
    ii. If the Accused denies violating University rules, the allegations shall be referred by the Student Conduct Administrator for a Hearing before the Student Conduct Board under Part II.F.4 below.

e. A Student Conduct Board Hearing shall be scheduled within thirty (30) business days after the Accused has met with the Student Conduct Administrator under Part II.F.3.d. above. In cases in which an examination period intervenes between the time of the notice to the Accused and the Student Conduct Board Hearing date, such Hearing will be held during the first week in which classes are again in session. In the case of inclement weather, the chair of the Student Conduct Board will notify all parties of any cancellations or schedule changes.

4. Student Conduct Board Hearings

a. **Closed Hearing**. A Student Conduct Board Hearing will be conducted in closed session. Any request for an exception must be submitted in writing to the Chair of the Student Conduct Board, who shall render a final written decision.

b. **Hearing Notice.** At least fifteen (15) business days prior to the Student Conduct Board Hearing, the Chair of the Student Conduct Board will provide written notice to the parties of the following:
    i. Date, time and place for the hearing,
    ii. Name of the members of the Student Conduct Board, and
    iii. Summary statement of the charges, or a copy of the complaint.

c. **Challenge.** Both the Accused and Complainant may challenge in writing the impartiality of any member of the Student Conduct Board up to three (3) business days after receiving the Hearing Notice by submitting their reasons for the challenge to the Student Conduct Administrator. The challenging party shall with specificity, and clarity detail each reason for such challenge. The burden of proving the impartiality or inability of a Conduct Board member to serve lies solely upon the challenging party. If the challenging party establishes that the challenged members cannot serve with fairness and objectivity such member shall be removed and a substitute will be appointed by the Student Conduct Administrator. If such member is removed, the Student Conduct Administrator may choose to reschedule the hearing.

d. **Evidence Submission.** At least ten (10) business days prior to the date scheduled for the Student Conduct Board Hearing, the Complainant and the Accused must submit to the Chair of the Student Conduct Board the following information, if applicable:
    i. All pertinent records and exhibits;
    ii. Written statements must be notarized (including Impact or Position Statements);
    iii. A list of all witnesses, if any, who will be speaking on behalf of the Accused or Complainant;
    iv. The name of the advisor, if any, who may be present in an advisory capacity at the hearing. See Part II.F.4.i below.

   Requests for extensions to file information with the Student Conduct Board shall be submitted to the Chair.

e. **Evidence Exchange.** At least five (5) business days prior to the hearing, the Chair will provide each party with the information, if any, submitted by the other party.

f. **Separate or Joint Hearings.** A Student Conduct Board Hearing involving two or more Accused, may be conducted separately or jointly as determined by the Student Conduct Administrator. An accused may request in writing to the Student Conduct Administrator a separate hearing up to three (3) business days after receiving the notice of hearing. The Student Conduct Board Administrator shall notify the accused whether a separate hearing will be granted within three (3) business days.

g. **Recordings.** The University shall record – either digitally, through audiotape, or otherwise as deemed appropriate – all Student Conduct Board Hearings until such time that the Student Conduct Board begins discussion and deliberation and prepares its findings and recommendations. Deliberations shall not be recorded. The record is University property. Pursuant to the Family Educational Rights and Privacy Act of 1974 (FERPA), as amended, the student will be allowed to review, but not to copy, the hearing record. 34 C.F.R. § 99.10 (2003). Neither the Complainant, the Accused nor any witnesses are permitted to make any independent record of the proceedings.

h. **Hearing Attendance.** The Complainant, Accused, and their respective advisor, if any, shall be allowed to attend the portion of the Student Conduct Board Hearing at which information is received, excluding deliberations.

i. **Advisors.** The advisor must be a faculty, staff, or student of TTUHSC. However, if an Accused is also the subject of a pending criminal investigation, indictment or charge arising out of the same circumstances, he or she may be allowed to have an attorney serve as their advisor, at their own expense, to participate only in the same manner as any other advisor. If an advisor for the Accused is an attorney, an attorney from the Office of General Counsel may attend the Student Conduct Board Hearing on behalf of the University. An attorney from the Office of General Counsel shall be provided for the Student Conduct Board as the Student Conduct Board Chair deems necessary.

    i. The Complainant and the Accused are responsible for presenting their own information, and therefore, advisors are not permitted to speak or to participate directly or indirectly in any Student Conduct Board Hearing before a Student Conduct Board. A student should select as an advisor a person whose schedule allows attendance at the scheduled date and time for the Student Conduct Board Hearing, as delays will not be allowed due to the scheduling conflicts of an advisor.

j. **Witnesses.** Questioning of witnesses will first be conducted by members of the Student Conduct Board, followed by the parties. Questioning by the Complainant and the Accused may be limited by the Chair of the Student Conduct Board for such issues as preserving the civility of the hearing, avoiding redundant and irrelevant questioning, and providing for the efficient administration of the Hearing. Witnesses are permitted to attend the Student Conduct Board Hearing only while they are providing testimony, they are being questioned by the Complainant, the Accused, or the Conduct Board unless the Student Conduct Board Chair determines otherwise.

    i. **Party Witnesses**. The Complainant and the Accused may arrange for witnesses to present pertinent information to the Student Conduct Board. The Complainant and the Accused are solely responsible for arranging for the voluntary attendance of their own witnesses. The hearing will not be rescheduled to accommodate party witnesses.

    ii. **Board Witnesses**. The Student Conduct Board may call other witnesses not identified by the Accused or the Complainant. If, prior to the hearing, the Student Conduct Board wishes to call witnesses, the Board shall notify the Chair of the Student Conduct. The Chair will then arrange for the voluntary attendance of the witnesses identified by the Student Conduct Board. The Chair shall notify the Accused and the Complainant of the additional witnesses. If any witness called by the Student Conduct Board intends to present written information to the Board, the Chair is responsible for forwarding such information to the Complainant, the

Accused, and the Student Conduct Board prior to the Hearing. Throughout this process, Board members shall have no communication with any witnesses, except in the Hearing with the Accused and Complainant present.

k. **Procedural Questions.** All procedural questions are subject to the final decision of the Chair of the Student Conduct Board. If a Student Conduct Board has not been appointed, the Student Conduct Administrator will issue a final decision in response to procedural questions.

l. **Deliberations.** Once the Student Conduct Board receives all information, the Student Conduct Board shall adjourn the Hearing to discuss, deliberate and prepare findings and recommendations. The Student Conduct Board will determine by a simple majority (more than half of the votes cast) of members present at a duly called meeting and then vote whether the Accused has violated any section of the Student Code which the student is charged with violating. If the Student Conduct Board finds violations of the Student Code, the Student Conduct Board may also recommend all or any of the sanctions identified in Part II.G below.

m. **Failure to Appear.** The Accused is expected to attend and participate in the Student Conduct Board Hearing. If the Accused or the Complainant elects not to attend a hearing after appropriate written notice Section II.F.4.b above, the charges will be reviewed as scheduled on the basis of the information available, and a recommendation will be made by the Board. No inference may be drawn against the Accused for failing to attend a hearing or remaining silent. The hearing will proceed and the conclusion will be based on the evidence presented. No decision shall be based solely on the failure of the Accused to attend the hearing or answer the charges.

n. **Findings and Recommendations.** The Chair is responsible for preparing the Student Conduct Board's Findings and Recommendations in writing. If the Findings and Recommendations are not unanimous, opinions may be written by those who differ with the majority's findings and recommendations. The Chair will forward the findings and recommendations, including differing opinions, within ten (10) business days to the Dean, the Student Conduct Administrator, the Accused and the Complainant.

o. **Dean's Review.** The Dean will review the Findings and Recommendations from the Student Conduct Hearing along with the audio recording and supporting documents, and transmit their decision in writing within ten (10) business days from receipt to the Accused, the Complainant, the Student Conduct Administrator, and the Chair of the Student Conduct Board. Actions of the Dean are not limited to sanctions recommended by members of the Student Conduct Board.

p. **Appeal.** Within five (5) business days of receipt of the decision of the Dean, if either party believes that their due process procedures have been violated or that new information has become available, an appeal may be made in writing to the Provost of the University. The Provost or their designee will review the case and notify all parties of their decision within five (5) business days. If a written appeal is not submitted within five (5) business days following receipt of the Dean's letter, the right to appeal is waived and the Dean's decision will be finalized.

   The Accused or Complainant may only raise, and the Provost or their designee shall only consider, the following on appeal:

   i. Whether a procedural deviation occurred that substantially affected the outcome of the case;
   ii. Whether there is new information sufficient to alter the findings or other relevant facts not available or mentioned in the original hearing because such information or facts were not known to the person appealing at the time of the original Student Conduct Board Hearing.

q. **Provost's Review.** The Provost or their designee will review the findings and recommendations and, at their discretion, the record from the Student Conduct Hearing and supporting documents, and transmit their decision in writing to the Accused, the Complainant, the Student Conduct

Administrator, the Chair of the Student Conduct Board, and the Dean. The Provost or their designee's decision shall be final.

## G. Sanctions

1. Any student found to have engaged in misconduct may be assigned sanctions. The sanctions are designed to engage students in critical reflection of their choices, as well as educate and develop students through a process of accountability that promotes integrity, responsibility, and growth. The Dean of the School will consider the nature of the misconduct, the impact of the misconduct on the University community, the circumstances surrounding the misconduct, and previous sanctions assigned to others for similar misconduct in determining sanctions. Repeated misconduct may result in more serious sanctions, including suspension or expulsion.

2. Sanctions which may be recommended by the Student Conduct Board and imposed by the Dean of the School upon any student found to have violated this Student Code include, but are not limited to, the following:
   a. **Failing Grade or Cancellation of Credit.** Failing grade for an examination or assignment or for a course, or cancellation of all, or any portion, of a prior course credit.
   b. **Censure.** A notice in writing to the student that the student is in violation or has violated institutional regulations. At the Dean's discretion, the censure may remain permanently in the student's disciplinary file or be removed at graduation if certain conditions are met.
   c. **Probation.** A written reprimand for violation of specified regulations. Probation is for a designated period of time and includes the likelihood of more severe disciplinary sanctions if the student is found to violate any institutional regulations during the probationary period.
   d. **Loss of Privileges.** Denial of specified privileges for a designated period of time.
   e. **Restitution.** Compensation for loss, damage or injury. This may take the form of appropriate service and/or monetary or material replacement.
   f. **Discretionary Sanctions.** Assignments may be made at the discretion of the board, such as work assignments, essays, training, service to the University, temporary dismissal from a class or rotation site, an unexcused absence, a letter of unprofessional behavior in the disciplinary file or other related discretionary assignments.
   g. **Non-Academic Dismissal.** Dismissal of the student from their current program, with or without the option to apply for readmission to the University. The student's transcript will reflect the nature of the dismissal (Non-Academic Dismissal – Eligible to Re-Enroll or Non-Academic Dismissal – Ineligible to Re-Enroll).
   h. **Suspension.** Separation of the student from university for a defined (or specific) period of time, after which the student is eligible to return. Conditions for readmission must be specified.
   i. **Expulsion.** Permanent removal from the University. An expelled student will be permanently barred from enrollment and permanently prohibited from entering any University premises. Expulsion may prohibit the student from being admitted to, enrolling at, or entering the campus of another component institution of Texas Tech University System without prior written approval of the institution at which the student wishes to attend or be present. An expelled student's good standing is permanently removed. Expulsion is permanently noted on the student's transcript (Expulsion: Ineligible to Re-Enroll). An expelled student may request reconsideration based on new information that was not available at the time of conference.
   j. **Revocation of Admission or Degree.** Any admission or degree granted by the University may be revoked for fraud, misrepresentation or other violations of university standards in obtaining the degree, or for other serious violations committed by a student prior to graduation. Revocation of

degree is notated on the student's transcript.

k. **Withholding Degree.** The University may withhold awarding a degree otherwise earned until the completion of the process set forth in the Student Disciplinary Procedures.
l. **Criminal Trespass.** In accordance with Texas Education Code, Section 51.242, a student who has been suspended or disarmed after a Student Conduct Board Hearing for disrupting the orderly operation of the campus or facility of the institution as a condition of the suspension or dismissal may be denied access to a University campus or facility, or both, for the period of suspension, and in the case of dismissal, for a period not to exceed one year.
m. **Other Sanctions.** Any other sanctions which may be appropriate under the particular circumstances of the violation.
n. **Multiple Sanctions.** More than one of the sanctions listed above may be imposed for any single violation.

3. Student disciplinary records shall be kept separate from the student's education records by their School's Office of the Dean. Exceptions to this rule include dismissal from the University and revocation or withholding of a degree. This section shall not prevent the University from complying with any regulatory agency or licensure board requirements regarding the reporting of disciplinary actions and/or student behavior.

   *State law mandates that the student's transcript a) may be withheld pending investigation and b) include a notation regarding ineligibility to return due to disciplinary processes (e.g., withdrawal, dismissal, suspension, expulsion); See TX HB 449 and 1735 (2019).

4. Education records shall include any records of the disciplinary process involving any accused, registered student organization, and student claiming to be the victim of misconduct.

5. The following sanctions may be imposed upon registered student organizations or members thereof:
   a. Those sanctions listed above in Part II.G.1 above.
   b. Loss of selected rights and privileges for a specified period of time.
   c. Deactivation. Loss of all privileges, including University recognition and registration, for a specified period of time.

## H. Interpretation and Revision

1. Any question of interpretation or application of this Student Code shall be referred to the Dean of the appropriate School or their designee for final determination.

2. The Student Code Review Committee (Review Committee) shall conduct an annual review of the Student Code and make recommendations to the Provost regarding omission, clarifications, constructive changes and other matters relevant to the interpretation and operation of the Student Code. The Review Committee is composed of the Student Affairs representatives from each School. The Provost or their designee may invite recommendations by the President of the Student Government Association. A quorum for the Review Committee is four members.

# PART III: WITHDRAWAL OF CONSENT

The University may take immediate interim actions to eliminate hostile environments, prevent reoccurrence, and address any effects on the Complainant and university community prior to the initiation of formal Investigation and/or formal conduct procedures. These interim steps will be taken to minimize the burden on the Complainant while respecting due process rights of the Respondent. Remedies for students may include, but are not limited to counseling services, modifications to parking permissions, and modifications to academic schedule. Remedies will be evaluated on a case- by-case basis.

## A. INTERIM ACTIONS

The University may impose restrictions and/or separate a student from the university community pending the completion of the conduct process for alleged violation(s) of the TTUHSC Student Handbook when a student represents a threat of serious harm to others that is deemed a continuous threat, is facing allegations of serious criminal activity, to preserve the integrity of an Investigation, to preserve University property and/or to prevent disruption of, or interference with, the normal operations of the University. Interim actions can include separation from the institution or restrictions pending the completion of the conduct process for alleged violation(s) of the TTUHSC Student Handbook. Through an interim action or during an interim suspension, a student may be denied access to the University campuses/facilities/events. As determined appropriate by the Provost or designee, this restriction may include classes and/or all other University activities or privileges for which the student might otherwise be eligible. At the discretion of the Provost or designee, and with the approval of, and in collaboration with, the appropriate Dean(s), alternative coursework options may be pursued to minimize impact on the responding student. Interim action(s) or an Interim Suspension(s) are not sanctions; such action(s) are taken in an effort to protect the safety and well-being of the Complainant, Respondent, and/or other members of the University Community. Interim action(s) is/are preliminary in nature; it is in effect only until the conduct process has been completed. However, violations of interim action may result in additional violations of the TTUHSC Student Handbook. A student who receives an interim action(s) or interim suspension may request a meeting with the Provost or designee to demonstrate why an interim action(s) or suspension is not merited. Regardless of the outcome of this meeting, the University may still proceed with conducting an Investigation and the scheduling of a hearing.

1. **No Contact Order**. When initial inquiry indicates persistent and potentially escalating conflict between members of the University community, a No Contact Order may be issued as a remedial, non-punitive deterrent to further conflict or situational complication. A No Contact Order will be issued by the Provost or designee via the student's official TTUHSC email. The notice serves as an official directive that the student(s) have no contact with the other listed parties. Contact cannot occur in person, by telephone, email, text message or other electronic means of communication, or through a third party (other than an attorney). Should contact need to occur, the student should coordinate with the Office of the Provost. This notice may also come with other information related to changes in class schedule or other restrictions to facilitate the no contact order. Failure to comply with the no contact order may result in additional disciplinary action, including possible suspension or expulsion. Violations of No Contact orders may also result in immediate temporary suspension pending the completion of the conduct process. The term of a No Contact Order is "one year from the date of issuance, or the graduation of one or both parties, whichever comes first."

2. **Immediate Temporary Suspension**. A student may be temporarily suspended pending completion of conduct procedures if, in the judgment of the Provost or designee the physical or emotional well-being of a student or other students or members of the University community could be endangered or if the presence of the student could significantly disrupt the normal operations of the University. The Provost or designee will initiate appropriate conduct procedures to address the disruptive behavior within five (5) University working days from the date of temporary suspension. Initiation of appropriate conduct proceedings includes but is not limited to informing parties that an investigation has begun via a "Notice Letter." Upon Immediate Temporary Suspension, the student may no longer attend classes, use University services and/or resources, and is not allowed to be on campus until the conduct proceedings have been concluded or the Interim Action has been modified. Any instances whereby the student should need to return to campus must be coordinated through the Office of the Provost and the Texas Tech Police Department. Conduct, on or off campus, that may result in immediate temporary suspension: i. A significant and articulable threat to the health or safety of a student or other member(s) of the University community that is deemed a continuous threat; ii. Sexual assault, other forms of sexual misconduct, stalking, and relationship violence that are creating a hostile environment for the Complainant and the remedy for the harassment requires temporary separation; iii. Criminal felony charges related to weapons, drugs, aggravated assault, and/or terroristic threats; iv. Severe disruption in the academic community related to erratic behavior, threats, property damage, and/or speech with another student which loses legal protection, where the offending student is uncooperative with staff requests; v. Violation of a No Contact Order; vi. Retaliatory harm, discrimination, or conduct that meets the legal definition of harassment. In the event an Immediate Temporary Suspension is issued, a student may request a review of the Immediate Temporary Suspension by the Provost or designee. A student may request a review of an Immediate Temporary Suspension or Interim Action for off campus courses and activities by the Provost or designee. At the discretion of the Provost or designee, modifications can be made to an Immediate Temporary Suspension or Interim Action that impacts off campus courses and/or activities on a case-by-case basis.

3. **Other Interim Actions**. In the event that the physical or emotional well-being of a student, other students, or members of the University community could be endangered, or if the presence of the student could significantly disrupt the normal operations of the University, other interim actions may be taken to protect the educational environment. These actions include, but are not limited to, temporary changes in a student's academic schedule, and temporary restrictions from university activities, services and/or buildings, and representing the University. Non-Student Interim Actions. Any guest to the University who is alleged to have violated university policies and/or is deemed to pose a threat to the physical and/or emotional well-being of a student or other members of the University community and/or the presence of an individual could significantly disrupt the normal operations of the University, the Texas Tech Police Department will issue a Criminal Trespass to that individual(s).

NOTE: Students of Texas Tech University may be held responsible for actions of their guests.

## B. Recommendation to Withdraw Consent During Periods of Disruption

1. The term "period of disruption" is any period in which it reasonably appears that there is any of the following (Texas Education Code § 51.231):
    - Threats of destruction to university premises;
    - Physical or emotional injury to human life on university premises; or,
    - Threats of willful disruption of the orderly operation of the University.

    a. During periods of disruption, the Department Chair within the applicable School may recommend to the Dean that prior to a Student Conduct Board Hearing, a student have their consent to be in attendance at the University or on University premises be withdrawn when there is reasonable cause to believe that the student has willfully disrupted the orderly operation of University premises and that their presence on University premises will constitute a substantial and material threat to the orderly operation of the University premises, in accordance with Texas Education Code, Section 51.233.

    b. Withdrawal of Consent shall not be longer than fourteen (14) days from the date on which consent was initially withdrawn.

    c. Withdrawal of Consent is specifically provided by state statute (Texas Education Code § 51.233, et seq.). The provisions of Part III do not affect the power of the University to suspend, dismiss, or expel any student or employee at the University in accordance with the procedures set forth in Part II of this Handbook. If a person is alleged to have violated the Student Code, and Withdraw of Consent also occurs, the procedures set forth in Parts II and III may occur concurrently.

2. Concurrence by Dean

    a. If the Dean concurs with the Department Chair's recommendation, the student will have their consent to be in attendance at the University or on university premises withdrawal in writing by the Dean. Texas Education Code § 51.233(a) & 51.234.

    b. The written notice by the Dean shall contain all of the following:

    c. That consent to remain on the campus has been withdrawn and the number of days for which consent has been withdrawn, not to exceed fourteen (14);

    d. Name and job title of the person withdrawing consent, along with an address where the person withdrawing consent can be contacted during regular working hours;

    e. Brief statement of the activity or activities resulting in the Withdrawal of Consent; and,

    f. Notification that the student is entitled to a hearing on the withdrawal not later than three (3) days from the date of receipt by the Dean of a request for hearing from the person.

    g. Whenever consent is withdrawn by the Dean, the Dean shall submit a written report to the Provost within twenty-four (24) hours, unless the Dean has reinstated consent for the student. The report shall contain the following:

h. Description of the student, including, the student's name, address, and phone number; and,

i. Statement of the facts giving rise to the Withdrawal of Consent.

3. Confirmation by Provost

a. If the Provost or their designee, upon reviewing the Dean's written report finds that there was reasonable cause to believe that the student has willfully disrupted the orderly operation of the University or university premises, and that the student's presence on university premises will constitute a substantial and material threat to the orderly operation of the campus or facility, the Provost or their designee may enter written confirmation upon the report of the action taken by the Dean. Texas Education Code § 51.236 (b).

b. If the Provost or their designee does not confirm the action taken by the Dean within 24 hours after the time that consent was withdrawn, the Withdrawal of Consent shall be deemed void and of no force or effect, except that any arrest made during the period shall not for this reason be deemed to have been made for probable cause.

4. Hearing

a. The student from whom consent to remain on campus has been withdrawn may submit a written request for a hearing to the Provost within the fourteen (14) day period of withdrawal. The written request must state the address to which notice of hearing is to be sent.

b. The student shall be entitled to the following procedures in accordance with the Texas Education Code, Sections 51.234 and 51.243.

- *Hearing Notice.* Upon receipt of the request for hearing, the Provost or their designee shall grant the request and immediately mail a written notice of the time, place, and date of the hearing, along with pertinent records, exhibits and written statements to the student. A hearing will be conducted not later than three (3) days from the date that the Provost receives the request for hearing. The Hearing Committee will be appointed by the Provost or their designee and will be comprised of members from Schools other than that in which the Accused is enrolled.
- *Representation.* The student may be represented by counsel. The University will be represented by the Office of General Counsel.
- *Witnesses.* Both the student and the Department Chair who recommended consent be withdrawn have the right to call, question witnesses, and cross-examine witnesses at the hearing. Members of the Hearing Committee may also question the witnesses. Witnesses are permitted to attend the Hearing only when they are providing information, unless the Hearing Committee allows otherwise. Following the hearing, the student shall be advised of the content of the statements from witnesses, and the names of the persons who made them, at the hearing.
- *Evidence.* All evidence upon which the decision to withdraw consent may be based shall be introduced at the hearing. The decision to withdraw consent shall be based solely on the evidence presented at the hearing. At least one (1) day prior the date scheduled for the Hearing, the parties must submit to the Chair of the Hearing Committee the following information, if applicable.
    i. All pertinent records, exhibits and written statements (including Impact or Position Statements);
    ii. A list of witnesses, if any, who will be speaking on behalf of the Accused or Complainant, including a brief summary of the information to be given by each; and,

iii. The name of the advisor, if any, who may be present in an advisory capacity at the hearing. See Part II.F.4.i.

- *Procedural Questions.* All procedural questions are subject to the final decision of the Chair.
- *Recordings.* The University shall record, either digitally or through audiotape, or otherwise as deemed appropriate all Hearings until such time that the Hearing Committee begins discussion and deliberation and prepares Findings and Recommendations. Deliberations shall not be recorded. The record is University property.
- *Appeal to Provost.* The student may appeal the decision within three (3) days from the date of the decision by sending a written appeal to the Provost. The Provost or their designee will review and render a decision within seven (7) days. If the student does not appeal the decision by the hearing committee, the decision is finalized.
- *Appeal to the President.* If the student is not satisfied with the decision by the Provost or their designee, the student may appeal to the President by sending a written appeal to the President, with a copy to the Provost, within three (3) days from the date of the Provost or their designee's decision. If the student does not appeal the decision, the Provost or their designee's decision is final. If the student appeals to the President, the decision by the President is final.

# PART IV: ANTI-DISCRIMINATION AND SEXUAL MISCONDUCT POLICY AND PROCEDURES (INCLUDING TITLE IX)

The University is committed to providing and strengthening an educational, working, and living environment where students, faculty, staff, and visitors are free from sex discrimination of any kind. The University prohibits discrimination based on sex, which includes pregnancy, sexual orientation, gender identity, gender expression, and other types of Sexual Misconduct. Sexual Misconduct is a broad term encompassing all forms of gender-based harassment or discrimination and unwelcome behavior of a sexual nature, including

- Sexual Harassment,
- Sexual Assault,
- Sexual Exploitation,
- Stalking,
- Public Indecency,
- Interpersonal Violence, including Dating, Domestic, or Family Violence,
- Sexual Violence,
- and any other misconduct based on sex.

Discriminatory behavior is prohibited regardless of the manner in which it is exhibited, whether verbally, in writing, by actions, or electronically conveyed.

## A. INTRODUCTION

This Part IV provides information regarding the University's response and prevention efforts related to sex discrimination and Sexual Misconduct. In conjunction with Texas Tech University System Regulation 07.10 Non-

Discrimination and Anti-Harassment Policy and Complaint Procedure, TTUHSC OP 51.02, Texas Tech University System Regulation 07.06 Sexual Misconduct, and TTUHSC OP 51.03, the policies set forth here apply to all members of the University Community, provide students with their rights and options, and also explain how the University will proceed once it is made aware of allegations of prohibited conduct in keeping with the University's values and in order to meet the legal obligations of Title IX, the Violence Against Women Act (VAWA), the Campus Sexual Violence Elimination Act (SaVE), the Clery Act, Texas Education Code, 34 CFR Part 106, and other applicable law.

The University expects all members of the University Community to comply with the law. Members of the University Community who violate these policies and laws may be subject to disciplinary action or sanctions, up to and including termination of employment, expulsion from the university, or being barred from university premises and events.

## B. Non-Discrimination and Anti-Harassment Policy

The University does not tolerate discrimination or harassment based on or related to sex (including pregnancy), race, color, religion, national origin, age, disability, genetic information, protected veteran status, sexual orientation, gender identity, gender expression, or other protected categories, classes, or characteristics. Texas Tech University System Regulation 07.10 Non-Discrimination and Anti-Harassment Policy and Complaint Procedure, adopted by Texas Tech University Health Sciences Center HSC OP 51.02 applies to all University students and University employees, visitors, applicants for admission to or employment with the University, as well as University affiliates and others conducting business on University campuses.

If a student has a complaint of discrimination or harassment by an employee, whether faculty, staff, or student employee (other than for Sexual Misconduct, which is addressed under Section C below), the provisions relating to the complaint process set forth in Texas Tech University System Regulation 07.10 and TTUHSC OP 51.02 shall apply. Students with such complaints of discrimination or harassment by an employee should contact the System Office of Equal Opportunity (OEO) and/or submit a completed Complaint of Discrimination or Harassment form to OEO, which is available at: https://www.texastech.edu/offices/equal-employment/ or https://cm.maxient.com/reportingform.php?TexasTechUnivHSCSS&layout_id=4. OEO's complete contact. OEO's complete contact information is as follows:

| Contact | Phone | Address | Email |
|---|---|---|---|
| Dawn Payne<br>Assistant Vice Chancellor and Director,<br>Texas Tech University System Office of Equal Opportunity | 806.742.3627 | TTU System Administration Building<br>1508 Knoxville Avenue Suite 309<br>TTUS Office of Equal Opportunity<br>Box 41073<br>Lubbock, TX 79409 | eeo@ttu.edu |

If a student has a complaint of discrimination or harassment by a student or a student organization, such complaints are guided by the same process as Non-Title IX Sexual Misconduct under Section D below. Students with complaints of discrimination or harassment by a student or student organization should contact the University's Title IX Coordinator and/or utilize the online Incident Report Form available at https://cm.maxient.com/reportingform.php?TexasTechUnivHSCSS&layout_id=10. TTUHSC's Title IX Coordinator's complete contact information is as follows:

| Contact | Phone | Address | Email |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Leslie Collins<br>TTUHSC Title IX Coordinator | 806.743.9861 | TTUHSC<br>3601 4th Street, Stop 6262<br>University Center 330A<br>Lubbock, TX 79430 | leslie.collins@ttuhsc.edu |

In instances of complaints of sex or gender discrimination, the complainants may contact the University's Title IX Coordinator, whose complete contact information is as follows:

| CONTACT | PHONE | ADDRESS | EMAIL |
|---|---|---|---|
| Leslie Collins<br>TTUHSC Title IX Coordinator | 806.743.9861 | TTUHSC<br>3601 4th Street, Stop 6262<br>University Center 330A<br>Lubbock, TX 79430 | leslie.collins@ttuhsc.edu |

While Sexual Harassment, Sexual Assault, and other forms of Sexual Misconduct may constitute prohibited acts of discrimination under this Section B, such behavior is prohibited under TTU System Regulation 07.06 and TTUHSC OP 51.03, as discussed in Section C below.

## C. SEXUAL MISCONDUCT

Sexual Misconduct in the TTUHSC community is prohibited pursuant to Texas Tech University System Regulation 07.06 Sexual Misconduct (adopted by TTUHSC as OP 51.03).

**1. Separate Policies for Title IX Sexual Misconduct and Non-Title IX Sexual Misconduct**

While all Sexual Misconduct is prohibited, in accordance with applicable federal and state law, the University has adopted two distinct policies and grievance procedures for Title IX Sexual Misconduct and Non-Title IX Sexual Misconduct. These policies are available at the following links:

- Texas Tech University System Regulation 07.06.A Title IX Sexual Misconduct; and
- Texas Tech University System Regulation 07.06.B Non-Title IX Sexual Misconduct.

The University Title IX Coordinator will assist those making reports or complaints of Sexual Misconduct with understanding which policy may apply based on the nature, context, and location of the alleged conduct. The flowchart available here visually depicts the applicability of these two policies and their respective grievance processes. In the event of any conflict between this Student Handbook and System Regulations 07.06.A, 07.06.B, and 07.10, the system regulations will control.

The University Title IX Coordinator oversees the University's compliance with the Sexual Misconduct policies, including both Title IX and Non-Title IX Sexual Misconduct. The University has also designated a Title IX Deputy Coordinator for employees. Contact information for the Coordinator and Deputy Coordinator is as follows:

| CONTACT | PHONE | ADDRESS | EMAIL & WEBSITE |
|---|---|---|---|
| Leslie Collins<br>TTUHSC Title IX Coordinator | 806.743.9861 | TTUHSC<br>3601 4th Street, Stop 6262<br>University Center 330A<br>Lubbock, TX 79430 | Leslie.collins@ttuhsc.edu<br>https://www.ttuhsc.edu/title-ix/default.aspx |
| Dawn Payne | 806.742.3627 | System Administration Building<br>1508 Knoxville Ave., Suite 309 | eeo@ttu.edu |

| | | | |
|---|---|---|---|
| TTUHSC Title IX Deputy Coordinator for Employees | | Box 41073<br>Lubbock, TX 79409 | http://www.texastech.edu/offices/equal-employment/ |

**2. Title IX Sexual Misconduct**

Title IX Sexual Misconduct is governed by Texas Tech University System Regulation 07.06.A. Generally, only sexual assault; stalking; dating violence; domestic violence; *quid pro quo* conduct; and conduct that is severe, pervasive, *and* objectionably offensive will constitute Title IX Sexual Misconduct, and be governed by such policy. The procedure for reporting and filing a formal complaint of Title IX Sexual Misconduct, and the grievance process for addressing such complaints, is set forth in System Regulation 07.06.A. The provisions of the remainder of this Section C may not apply to reports and complaints of Title IX Sexual Misconduct. The University's Title IX Coordinator will assist students in navigating these policies.

All other forms of Sexual Misconduct are addressed pursuant to the Non-Title IX Sexual Misconduct policy, set forth in this Student Handbook and governed by System Regulation 07.06.B.

**3. Non-Title IX Sexual Misconduct**

Any Sexual Misconduct that fails to meet the threshold of Title IX Sexual Misconduct will proceed under the Non-Title IX Sexual Misconduct policy set forth in this Student Handbook.

All investigations and procedures under this policy will be conducted in a reasonably prompt timeframe and in an equitable and impartial manner. Investigations conducted hereunder are not criminal investigations. For all complaints, the burden of proof shall be a preponderance of the evidence, which means more likely than not.

The Title IX Coordinator or their designee will investigate complaints of Sexual Misconduct by or between students. The Texas Tech University System Office of Equal Opportunity (Office of EO) will investigate complaints of Sexual Misconduct by or between employees. Student complaints of Sexual Misconduct by an employee may be investigated jointly by the Title IX Coordinator or their designee and the Office of Equal Opportunity.

Students with complaints of Sexual Misconduct by a student, student organization, or employee should contact the Title IX Coordinator or Office of Equal Opportunity, or utilize the online reporting tool available on the University's website at www.ttuhsc.edu/title-ix/default.aspx.

Individuals wishing to remain anonymous can report Sexual Misconduct in any manner, including by telephone or written communication, with the University Title IX Coordinator or Office of Equal Opportunity. However, electing to remain anonymous may greatly limit the University's ability to investigate an alleged incident, collect evidence, and/or take effective action against individuals or organizations accused of violating the TTUHSC Sexual Misconduct policies.

**4. Employees are Mandatory Reporters**

Pursuant to Texas law, all employees, including student employees, who in the course and scope of employment, witness or receive information regarding the occurrence of an incident that the employee reasonably believes constitutes Sexual Misconduct and is alleged to have been committed by or against a person who was a student enrolled at or an employee of the University at the time of the incident shall

promptly report the incident to the University's Title IX Coordinator or Deputy Title IX Coordinators. An employee is required to report an incident regardless of where or when the incident occurred. Failure to report Sexual Harassment, Sexual Assault, Dating Violence, or Stalking is a violation of Texas state law that shall result in termination of employment and may result in criminal penalties.

Reports by mandatory reporters must include all information concerning the incident known to the Reporting Party, including the involved parties' names, regardless of whether the Complainant has expressed a desire for confidentiality; however, the Reporting Party may also state whether the Complainant has expressed a desire for confidentiality.

Disclosures to a healthcare provider, mental health care provider, or other medical provider acting in the course and scope of their employment with the University are not subject to the foregoing mandatory reporting requirements and are considered Confidential Resources. These employees are encouraged to provide students or employees with information and guidance regarding university reporting options and available resources but absent consent from the Complainant, disclosures to a healthcare provider, mental health care provider, or other medical provider acting in the course and scope of their employment with the University shall only state the type of incident reported and may not include any information that would violate an expectation of privacy.

**5. Making a Report**

Any individual may inquire or make a report or complaint of Sexual Misconduct of any kind. Any person may submit a report in person, by mail, by phone, by email, or by online form, using the contact information set forth in Section 1 above, or by any other means that results in the University's Title IX Coordinator or System Office of Equal Opportunity receiving the verbal or written report. Such a report may be made at any time (including during non-business hours) by using the phone number or email address, or by mail to the office address. Persons, other than Employees, wishing to remain anonymous may do so by submitting a report in an anonymous manner; however, electing to remain anonymous may limit the ability to investigate an alleged incident, collect evidence, or take effective action against individuals accused of violating the University's Sexual Misconduct policies.

While not required, students are strongly encouraged to report any incident of Sexual Misconduct to the University, including incidents in which the student was a victim. Students may also report incidents of Sexual Misconduct to law enforcement, including on- campus and local police. Complainant may choose to notify law enforcement and will be provided the assistance of the Title IX Coordinator if the individual wishes. Parties may also choose not to notify law enforcement of incidents of Sexual Misconduct. A student who experiences sexual or dating violence is encouraged to seek medical care for treatment and preservation of evidence, if applicable, as soon as possible after the incident. Preserving DNA evidence can be key to a sexual violence case. Students can undergo a sexual assault forensic exam (SAFE) performed by a sexual assault nurse examiner (SANE) to preserve physical evidence with or without police involvement. If possible, this should be done immediately. If an immediate medical exam is not possible, a SANE may still collect evidence several days following a sexual assault. With the examinee's consent, the physical evidence collected during this medical exam can be used in a criminal investigation.

Anyone who experiences any form of Sexual Misconduct should also preserve other evidence relevant to the incident reported, such as items of clothing, photographs, phone records, text messages, social media activity, computer records, and other documents.

**6. Confidentiality**

TTUHSC is committed to ensuring confidentiality during all stages of a grievance process. The confidentiality of the Complainant, the Respondent, the Reporting Party, any individuals who have sought guidance about this policy or have participated in an investigation or incident will be honored by the University to the extent possible without compromising the University's commitment and obligation to investigate allegations of misconduct, to protect the University Community, and to the extent allowed by law. Unless waived in writing by the individual, the identity of aforementioned individuals:

a. Is confidential and not subject to disclosure under Chapter 552, Texas Government Code; and
b. May be disclosed only to:
    1. University Employees or individuals under contract with the University to which the report is made who are necessary for an investigation of the report or other related hearings;
    2. a law enforcement officer as necessary to conduct a criminal investigation of the report;
    3. a health care provider in an emergency, as determined necessary by the University;
    4. the Respondent, to the extent required by other law or regulation; and
    5. potential witnesses to the incident as necessary to conduct an investigation of the report and to the extent required by other law or regulation.

In some exceptional circumstances, where the incident in question presents a continuing threat to the University Community, the University may be required to investigate irrespective of the Complainant's desire to pursue allegations of Sexual Misconduct, and may be required to issue a "timely warning" to the campus community as required by the Clery Act. Timely warnings do not include personally identifiable information of involved parties.

However, because the University also has an obligation to maintain an environment free of sex discrimination and Sexual Misconduct, all University employees have mandatory reporting and response obligations and may not be able to honor a Complainant's request for confidentiality. The Title IX Coordinator or designee will evaluate requests for confidentiality. The willful and unnecessary disclosure of confidential information by anyone, including the Complainant or Respondent, may affect the integrity of the investigation.

Students may make confidential reports to the TTUHSC Counseling Center. Complainants may also make confidential reports to licensed clinical and mental health professionals acting in their professional role of providing those services, including medical providers employed by the University. Information may be shared by the clinical or medical provider only with the Complainant's or Respondent's consent.

Absent consent from the Complainant, disclosures to a healthcare provider, mental health care provider, or other medical provider acting in the course and scope of their employment with the University shall only state the type of incident reported and may not include any information that would violate an expectation of privacy. These Employees are encouraged to provide Complainants with information and guidance regarding university reporting options and available resources.

The following Confidential Resources are available to TTUHSC students:

| RESOURCES | PHONE |
|---|---|
| TTUHSC Counseling Center | 806.743.1327 |
| TTUHSC 24-Hour Crisis Helpline | 800-327-0328 |
| RAINN Helpline | 800-656-HOPE |

*Note*: The above resources can assist in accessing local advocacy groups and services.

**7. Interim and Supportive Measures**

The University may take immediate action to eliminate hostile environments and address any effects on the Complainant and community prior to the initiation of any Investigation Such supportive measures may be implemented by the University regardless of whether a party files a Formal Complaint of Sexual Misconduct. If a Formal Complaint is filed by a Complainant, the Complainant or Respondent may request and the University may implement interim measures as may be necessary to assure the safety and well-being of the participants in the Grievance Process, to maintain an environment free from harassment, discrimination, or retaliation and to protect the safety and well-being of the University Community. These measures will be taken to minimize the burden on the Complainant while respecting due process rights of the Respondent.

Additionally, the University may pursue Emergency Removal, altering the University status of the Respondent. Supportive Measures may be implemented and will be evaluated on a case-by-case basis. Supportive Measures may be kept in place through the conclusion of any review, investigation, resolution, or appeal process. Supportive Measures can be implemented regardless of whether or not the Complainant pursues a Formal Complaint or criminal action.

The Title IX Coordinator is available to help students understand the Grievance Process and identify resources. Remedies may be implemented after a determination regarding responsibility in the Grievance Process to restore and preserve equal educational opportunities to the Complainant.

a. ***Supportive Measures.*** Supportive measures are non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to a Complainant or Respondent. The range of Supportive Measures available includes, but is not limited to: separation or modification of Complainant and Respondent's academic or working situations; mutual restrictions on contact; one-way restrictions on contact, where justified by the specific facts and circumstances; permissive withdrawal from or retake of a class without penalty; counseling; extensions of deadlines or other course-related adjustments; campus escort services; leaves of absence; increased security and monitoring of certain areas of campus; or any other similar measures tailored to the individualized needs of the parties. Consistent with Texas law, a Complainant or Respondent who is the subject of an alleged incident of Title IX Sexual Misconduct will be allowed to drop a course in which they are both enrolled without any academic penalty. Supportive Measures may be kept in place through or beyond the conclusion of any review, investigation, or appeal process and may be implemented regardless of whether Complainant files a complaint of Sexual Misconduct.

b. ***No Contact Order.*** When initial inquiry indicates persistent and potentially escalating conflict between members of the University Community, a No Contact Order may be issued as a remedial, non-punitive deterrent to further conflict or situational complication. A No Contact Order will be issued by the Title IX Coordinator via the student's official TTUHSC email. The notice serves as an official directive that the students have no contact with the other listed parties. Contact cannot occur in person, by telephone, email, text message or other electronic means of communication, or through a third party (other than an attorney). Should contact need to occur, the student should coordinate with the Title IX Coordinator. This notice may also come with other information related to changes in class schedule or other restrictions to facilitate the No Contact Order. Failure to comply with the No Contact Order may result in disciplinary action, including possible suspension or expulsion. Violations of No Contact Orders may also result in Emergency Removal pending the completion of a Grievance Process. No Contact Orders will remain in effect until dismissed in writing by the Title IX Coordinator or designee, or at the time one or both parties is no

longer enrolled as a student at TTUHSC, whichever comes first.

c. ***Emergency Removal.*** The University may conduct an individualized safety and risk analysis to determine if an individual poses an immediate threat to the physical health or safety of any student or other individual arising from the allegations of Sexual Misconduct that justifies removal. Where the University finds that a Respondent poses an immediate threat to the physical health or safety of any student or individual, the University may remove the Respondent prior to the conclusion of the Grievance Process to protect the safety of the University Community where an immediate threat exists. The University shall provide the Respondent with notice and an immediate opportunity to challenge the decision in writing to the Title IX Coordinator immediately following the removal.

Through an Emergency Removal, a student may be denied access to the University's campus, facilities, and events. This restriction may include classes and all other University activities or privileges for which the student might otherwise be eligible. Alternative coursework options may be pursued to ensure as minimal an impact as possible on the Respondent at the discretion of the Title IX Coordinator or designee and with the approval of the appropriate Dean(s).

Emergency Removal is not a sanction. It is taken in an effort to protect the safety and well-being of the Complainant, Respondent, and members of the University Community. Emergency Removal is preliminary in nature; it is in effect only until the Grievance Process has been completed. However, violations of Emergency Removal may result in additional allegations of this Student Handbook. A student who receives an Emergency Removal may request a meeting with an Appeals Officer or designee to challenge an Emergency Removal. Regardless of the outcome of this meeting, the University may still proceed with an investigation and adjudication.

d. ***Non-Student Supportive Measures.*** TTUHSC, in conjunction with the Texas Tech Police Department, may issue a Criminal Trespass to any individual or guest of the University whose presence could significantly disrupt the normal operations of the University, or who is alleged to have violated University policies, or is deemed to pose a threat to the physical or emotional well-being of a student or other members of the University Community.

**8. Student Rights and Responsibilities**

Prior to the formal investigative process, a student will be provided a Student Rights and Responsibilities document. This document will be reviewed and signed by the student prior to an interview. The Student Rights and Responsibilities document informs the student of their rights to be exercised before and during the Grievance Process.

Subject to applicable law, information gathered by the University during the course of the investigation and Grievance Process may only be shared with faculty, staff, students, and advisors who are directly involved in the incident or necessary to the Grievance Process unless otherwise disclosed in compliance with a judicial order or lawfully issued subpoena.

Involved parties have the right to, and are encouraged to, be accompanied by an advisor of the individual's choosing during all meetings, proceedings, and disciplinary hearings at which the individual is present. In Non-Title IX Sexual Misconduct Hearings, the role of the advisor will be limited to advising only and will not be allowed to actively participate in the Hearing.

**9. Amnesty**

a. Subject to the exceptions noted below, the University will not take any disciplinary action against a student enrolled at the University who in good faith reports to the University being the victim of, or a witness to, an incident of Sexual Harassment, Sexual Assault, Interpersonal Violence, or Stalking for a violation by the student of this Student Handbook, occurring at or near the time of the incident, regardless of the location at which the incident occurred or the outcome of the University's disciplinary process regarding the incident, if any.

b. The University reserves the right to investigate to determine whether a report of an incident of Sexual Harassment, Sexual Assault, Interpersonal Violence, or Stalking was made in good faith. After such investigation, the Title IX Coordinator or their designee will make a determination as to whether a student is entitled to amnesty. Once a determination is made regarding amnesty for a student, such determination is final and may not be revoked.

c. Notwithstanding the foregoing, amnesty does not apply to a student who reports the student's own commission or assistance in the commission of Sexual Harassment, Sexual Assault, Interpersonal Violence, or Stalking.

d. Although students eligible for amnesty may avoid disciplinary action under these amnesty provisions, amnesty does not preclude the University from encouraging students to participate in directives such as counseling or educational opportunities relating to the conduct students were engaged in.

e. Abuse of these amnesty provisions by a student may result in a violation of this Student Handbook. The amnesty provisions do not impact criminal proceedings or charges, mandatory reporting to state licensing boards, legal actions, or actions required to comply with professional ethic requirements.

**10. Interference with an Investigation**

Any person who knowingly and intentionally interferes with a Grievance Process conducted under this Student Handbook is subject to disciplinary action up to and including dismissal or separation from the University. Interference with a Grievance Process may include, but is not limited to:

- Attempting to coerce, compel, influence, or prevent an individual from providing testimony or relevant information;
- Divulging confidential information;
- Removing, destroying, or altering documentation relevant to the investigation;
- Providing false or misleading information to the investigator, or encouraging others to do so; or
- Making a report under this policy that, after investigation is found not to have been made in good faith.

**11. Retaliation and False Information**

Retaliation against an individual who reports a potential violation in good faith under this policy, assists someone with a report of a violation, or participates or refuses to participate in any manner in an investigation or in the resolution of a complaint made under this policy is strictly prohibited. Retaliation includes, but is not limited to threats, intimidation, coercion, discrimination, reprisals, or adverse actions related to an individual's

employment or education. The University will take appropriate steps to ensure that an individual who, in good faith, reports, complains about, or participates or refuses to participate in an investigation pursuant to this policy will not be subjected to retaliation. Individuals who believe they are experiencing retaliation are strongly encouraged to report the incident to the Title IX Coordinator using the same procedure outlined in this section.

Individuals who are found to have retaliated under this policy will be subject to disciplinary action, up to and including termination of employment, expulsion from the University, or being barred from university premises and events.

An individual found to have knowingly and in bad faith provided false or malicious information may be subject to disciplinary action up to and including dismissal or separation from the University. A determination that a Respondent is not responsible for allegations of Sexual Misconduct does not imply information provided was false. Similarly, a determination that a Respondent is responsible for a policy violation does not imply that a Respondent's statements disclaiming responsibility were false.

## D. Grievance Process for Non-Title IX Sexual Misconduct

This Section D sets forth the Grievance Process for Non-Title IX Sexual Misconduct. The process for Title IX Sexual Misconduct is set forth in System Regulation 07.06.A. The University Title IX Coordinator will assist parties in determining which process applies to the particular alleged conduct.

**1. Intake and Initial Inquiry**

Upon receipt of a report of Sexual Misconduct, the Title IX Coordinator, or their designee, will review the allegations. As reported allegations of Sexual Misconduct have varying degrees of complexity and severity, the investigation and resolution procedures described below may vary. The Title IX Coordinator or their designee will inquire, gather, and review information and will evaluate the accuracy, credibility, and sufficiency of the information received. If a formal complaint is not filed, the Title IX Coordinator may nonetheless conduct an investigation if the University learns of alleged Sexual Misconduct through other means depending on:

- the source and nature of the information provided,
- the seriousness of the alleged incident,
- the specificity of the information,
- the objectivity and credibility of the source of the report,
- whether any individuals can be identified who were subjected to the alleged Sexual Misconduct, and
- whether those individuals want to pursue the matter.

The Title IX Coordinator may conduct an initial meeting with the Reporting Party and/or Complainant to gather additional information regarding the allegation; inform him/her of on and off-campus resources, procedural options, and the University's policy regarding retaliation; and to determine safety, security, or other interim measures. Additional meetings may be necessary depending on the complexity of the reported allegations.

Incidents will not be investigated unless there is reasonable cause to believe a policy has been violated. Reasonable cause includes some credible information to support a policy violation. If it is determined that an investigation will be conducted, the Respondent will be given notice of the complaint and an opportunity to respond. If it is determined that an investigation will not be conducted, the Title IX Coordinator may contact the Respondent to discuss the reported concern.

When a Complainant is reluctant or refuses to participate in the investigation process, the Title IX Coordinator may investigate the allegations to the fullest extent possible given the information available. The University will make every attempt to follow the wishes of the Complainant while protecting the University Community.

**2. Filing a Formal Complaint**

A Formal Complaint is a document signed by a Complainant or the Title IX Coordinator alleging Sexual Misconduct against a Respondent requesting that the University investigate the allegations of Sexual Misconduct. While incidents may be reported by any third party, only the Complainant or Title IX Coordinator may initiate the Grievance Process through the Formal Complaint. A Formal Complaint is also required for any individuals wishing to pursue an Informal Resolution.

When a Formal Complaint is filed, the Title IX Coordinator provides written notice to the Respondent with sufficient time for the Respondent to prepare a response before an initial interview. The Notice of Formal Complaint includes information about the Grievance Process, the Informal Resolution Process, the allegations and any details known at the time, such as the name of the Complainant, the location, date and time of the alleged incident(s), and the specific sections of the policy that the Respondent is alleged to have violated. The Complainant also receives a copy of the Notice of Formal Complaint.

**3. Review of Formal Complaints**

When a Formal Complaint is received, the Title IX Coordinator will evaluate jurisdiction and mandatory and discretionary dismissal described below, assess appropriate Supportive Measures for both parties, evaluate the need for Emergency Removal, and initiate the Grievance Process.

*Mandatory and Permissive Dismissal.* The Title IX Coordinator shall dismiss a Formal Complaint of Non-Title IX Sexual Misconduct when: (1) the allegation describes conduct that would not constitute Non-Title IX Sexual Misconduct as defined, even if proven; or (2) the Respondent is not a member of the University Community. The Title IX Coordinator may dismiss a Formal Complaint in the following situations: (1) the Complainant notifies the Title IX Coordinator in writing that they wish to withdraw the Formal Complaint or some allegations in the Formal Complaint; (2) the Respondent is no longer enrolled in or employed by the University; or (3) circumstances exist that prevent the University from gathering sufficient evidence to reach a determination as to the Formal Complaint or the allegations.

*Application of Other Policies Upon Dismissal.* If the Title IX Coordinator dismisses a Formal Complaint or any of the allegations in the Complaint, the Title IX Coordinator must promptly send written notice of the dismissal and the reasons for the dismissal simultaneously to the Complainant and Respondent. Dismissal of a Formal Complaint does not preclude action under other policies, such as Title IX Sexual Misconduct.

*Appeal of Dismissal Decision.* Any party can appeal the dismissal decision following the criteria and procedures listed below under *Appeal Procedures.*

*Right to Consolidate Complaints*. The University may consolidate Formal Complaints as to allegations of Sexual Misconduct: (1) against more than one Respondent, (2) by more than one Complainant against one or more Respondents, or (3) by one party against the other party, where the allegations of Sexual Misconduct arise out of the same facts or circumstances.

**4. Investigation Process**

If the Title IX Coordinator or their designee conducts an investigation of the reported allegation, the investigation may consist of the review of the complaint, any relevant documentation, and interviews with relevant individuals. Each party will be given the opportunity to share information regarding the allegation, as well as any response to such, and identify witnesses and other relevant evidence. The extent of the investigation and its procedures will be determined by the Title IX Coordinator. During the investigative process, it is expected that the Complainant and the Respondent will cooperate with the University in providing all information or evidence that they believe should be considered. Additionally, other administrators may be consulted to assist with the investigation.

Prior to an investigative interview, the Complainants and Respondents will be provided a student rights and responsibilities document to review and sign. The student rights and responsibilities document inform the student of their rights to be exercised before and during the course of the investigation and student conduct process. Information gathered during the course of the investigation and student conduct process may only be shared with faculty, staff, students, and advisors who are directly involved in the incident or necessary to the student conduct process. Information gathered may also be disclosed in compliance with a judicial order, lawfully issued subpoena, or another legal requirement.

During the investigation, the burden of proof and burden of gathering evidence sufficient to reach a determination regarding responsibility is on the University and not on the parties. Complainants and Respondents are encouraged to present witnesses and evidence, including fact and expert witnesses, and other evidence that they believe should be considered. The University will make all reasonable efforts to obtain relevant information such as surveillance video footage, University card swipe access and other information that may be available to the Institution. The University cannot obtain information that is protected by a legally recognized privilege without the party's voluntary written consent. The University shall not access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, mental health professional, or other professional or paraprofessional providing treatment to the party, unless the party gives voluntary written consent.

After the investigation is complete, the Title IX Coordinator will prepare a written investigation report. Complainants and Respondents will have access to the completed investigation report and investigative materials relevant to the allegations after the formal investigative process has concluded. In order to protect confidentiality, Complainants and Respondents are not given copies or investigation reports or other investigative materials, but will have an opportunity to inspect and review any evidence obtained as part of the Investigation that is directly related to the allegations raised in the Formal Complaint.

*Withdrawal During a Formal Complaint.* In accordance with state law, if a student withdraws or graduates from the University pending a Formal Complaint alleging the student violated the *Student Code of Conduct* by committing sexual harassment, sexual assault, dating violence, or stalking, the institution:

a. May not end the disciplinary process or issue a transcript to the student until the institution makes a final determination of responsibility; and
b. Shall expedite the institution's disciplinary process as necessary to accommodate both the Respondent's and Complainant's interest in a speedy resolution.
c. On request from another institution, the University shall provide to the requesting institution information relating to a determination that a student enrolled violated the institution's Student Code of Conduct by committing sexual harassment, sexual assault, dating violence, or stalking.

Should students choose not participate in the Investigative Process, the Grievance Process may continue without their participation. The Investigator may assign allegations to the Respondent based on the information that the Investigator collected without the student's participation, if appropriate.

**5. Resolution Process**
Options for resolving Formal Complaints under the Grievance Process include:

a. *Informal Resolution.* Prior to the formal hearing, either the Complainant or the Respondent may make a request, either orally or in writing, for informal resolution to the Title IX Coordinator. The Title IX Coordinator will assess the severity of the alleged harassment and the potential risk of a hostile environment for others in the University Community to determine whether informal resolution may be appropriate. Mediation will not be used to resolve complaints of Sexual Assault and Interpersonal Violence.

   Upon determining that informal resolution is appropriate, the Title IX Coordinator will consult further with the person initiating the request, inform the other party, and gather additional relevant information from the parties and others as useful to assist in the informal resolution process. The Title IX Coordinator may also put in place any appropriate interim measures to protect the educational and work environment of the parties and the University Community.

   The University will not compel the Complainant or Respondent to engage in mediation, to directly confront the other party, or to participate in any particular form of informal resolution. Participation in informal resolution in voluntary, and the Complainant and Respondent have the option to discontinue the informal process at any time and request a formal investigation. If at any point during the informal resolution process, the Complainant, the Respondent, or the University wishes to cease the informal resolution process and to proceed through the formal resolution process, the informal resolution process will stop and the formal resolution process outlined in this of the Student Handbook below will proceed.

b. *Administrative Resolution.* At any point in the student conduct process, if the Respondent accepts responsibility for the alleged violations of policy, the Parties may choose to resolve the issue through the Administrative Resolution process outlined below. The Administrative Resolution process is voluntary.

   The Title IX Coordinator will, in consultation with the appropriate University dean (or if the allegation involves a student organization, the appropriate University staff member advisor of the organization) review the complaint and information gathered about the reported Sexual Misconduct, and if applicable, propose findings and specify appropriate sanctions. The Title IX Coordinator will send written notice to both the Complainant and the Respondent of the proposed findings and sanctions. The Parties will have five (5) business days to review the Administrative Resolution and decide whether they would like to accept or decline the proposed findings and recommended sanctions. Agreement with the terms of the Administrative Resolution is established by one of the two following ways:

   i. A signature, or an electronic signature, by a Party or the Parties attesting to the agreement with the findings and sanctions; or

   ii. No written objection by the Complainant or the Respondent to the findings and sanctions within five (5) business days of the date the proposed findings and recommended sanctions were sent to the Parties.

If both the Complainant and the Respondent agree with the proposed findings and recommended sanctions, the matter is considered concluded. Additionally, if accepted, the Parties waive their right to a hearing or an appeal, the process ends, and the finding is finalized. The complaint will only be reopened if new material is presented which was previously unavailable.

If either Party disagrees with or does not accept the proposed findings or recommended sanctions, then the complaint will proceed, and a hearing will take place.

c. *Hearing.* See Section E below for Hearing Procedures.

**6. Sanctions**

A Hearing Officer or a Hearing Panel may impose sanctions as a result of an Informal Resolution, or formal hearing, when a student is found responsible. Implementation of the disciplinary sanctions will begin when the time period to file an appeal has expired or when the appeal decision has been sent to the parties.

Both the Complainant and Respondent will be simultaneously notified of the Appeal Officer's decision and sanctions as appropriate. When sanctions are final, appropriate University Administrators may be notified of the student's sanctions. Findings and sanctions agreed upon through the Informal Resolution are final and cannot be appealed.

All records related to the disciplinary process will remain on file with the Title IX Coordinator for a minimum of seven (7) years from the date the case is completed through an Informal Resolution, formal hearing or the appeal procedures. All records related to the Grievance Process resulting in suspension or expulsion will remain on file indefinitely.

If a student is found responsible for violating the University Sexual Misconduct policies, sanctions may be imposed and can include, but are not limited to the following:

a. *Disciplinary Reprimand.* The Disciplinary Reprimand is an official written notification using the notice procedures outlined in this section to the student that the action in question was Misconduct.

b. *Disciplinary Probation.* Disciplinary Probation is a period of time during which a student's conduct will be observed and reviewed. The student must demonstrate the ability to comply with university policies, rules, and standards and any other requirement stipulated for the probationary period.

c. *Time-Limited Disciplinary Suspension.* Time-Limited Disciplinary Suspension is a specific period of time in which a student is not allowed to participate in class, University related activities, or be present on campus property. The status of Disciplinary Suspension will be shown on the student's academic record, including the transcript. Disciplinary Suspension is noted on the student's transcript by the phrase "Disciplinary Suspension" and will include the period of time in which the student was suspended from the University. In most instances, the notation of Disciplinary Suspension will remain on the transcript permanently. A student may petition to remove a Disciplinary Suspension notation if: 1) the student is eligible to reenroll in the institution or 2) the Title IX Coordinator or designee determines that good cause exists to remove the notation. A Disciplinary Suspension of a student will indicate the date on which the suspension period begins and the earliest date the application for student readmission will be considered. The Title IX Coordinator or designee may deny a student's readmission, if the student's misconduct during the suspension would have

warranted additional disciplinary action. If the student has failed to satisfy any sanction that was imposed prior to application for readmission, the Title IX Coordinator or designee may recommend denial of readmission of a student. On denial of a student's readmission, the Title IX Coordinator or designee will set a date when another application for readmission may again be made. An administrative hold will be placed on the student's record to prevent registration during the Disciplinary Suspension.

d. *Disciplinary Expulsion*. Disciplinary Expulsion occurs when the student is permanently withdrawn and separated from the university. An expelled student will be permanently barred from enrollment and permanently prohibited from entering any University premises. Expulsion may prohibit the student from being admitted to, enrolling at, or entering the campus of another component institution of Texas Tech University System without prior written approval of the institution at which the student wishes to attend or be present. An expelled student's good standing is permanently removed. Expulsion is permanently noted on the student's transcript (Expulsion: Ineligible to Re-Enroll). A student has the ability to petition to remove a Disciplinary Expulsion notation in the following instances: 1) the student is eligible to reenroll in the institution or 2) the Title IX Coordinator or designee determines that good cause exists to remove the notation. An administrative hold will be placed on the student's record to prevent future registration.

7. **Appeal Procedures**

Either the Complainant or Respondent may appeal the decision, or the sanctions, conditions, and restrictions imposed by the Hearing Officers by submitting a written appeal to the Provost or their designee within three (3) business days of receiving the written decision. The appeal must clearly set forth the grounds for the appeal, together with the evidence upon which the appeal is based. A disagreement with the decision alone shall not constitute grounds for appeal. The only proper grounds for appeal and the only issues that may be considered on appeal are as follows:

a. A procedural irregularity that affected the outcome of the matter;
b. New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter;
c. The Title IX Coordinator, Investigators, or Hearing Panel Members had a conflict of interest or bias for or against Complainants or Respondents generally or the individual Complainant or Respondent that affected the outcome of the matter; or
d. The sanctions imposed substantially vary from the range of sanctions normally imposed for similar infractions.

The appeal process is initiated upon a party's filing of a written appeal within three (3) University business days after University's delivery of the written decision regarding responsibility. The written appeal must be filed with the University's Title IX Coordinator or System Office of Equal Opportunity as directed in the written determination regarding responsibility, and the party's written appeal must set forth the grounds for the appeal and any supporting information.

Upon the filing of a written appeal, University will give written notice of the filed appeal to the non-appealing party. The non-appealing party will have three (3) University business days after University's delivery of the written notice to respond to the appeal.

The Provost or their designee will review the appeal to determine if the appeal is timely and properly sets forth the

appropriate grounds for appeal. If any of these requirements are not met, the appeal will be dismissed and the original decision of the Hearing Officers will be final. If the grounds for an appeal are determined proper by the Provost or their designee, the Title IX Coordinator will provide the request for appeal to the other party and provide opportunity for response. Any responses must be provided to the Provost or their designee within five (5) business days after receiving a copy of the request for appeal.

If the Provost or their designee determines that a procedural or substantive error occurred that significantly impacted the outcome of the hearing, they may order a new hearing. If a new hearing is ordered, all hearing procedures in will be followed. The Title IX Coordinator will notify the Complainant and Respondent of the outcome within five (5) business days of the decision of the Hearing Officers. The decision of the Hearing Officers is final and may not be appealed.

If the Provost or their designee determines that new evidence should be considered, they may return the complaint to the original Hearing Officers to reconsider the new evidence or may order a new hearing. If new evidence is considered, the Hearing Officers may increase, decrease, or otherwise modify the findings, sanctions, conditions, and/or restrictions. The Title IX Coordinator will notify the student of the outcome within five (5) business days of the decision of the Hearing Officers. The decision is final and may not be appealed. If a new hearing is ordered, all hearing procedures will be followed. The Title IX Coordinator will notify the Complainant and Respondent of the outcome within five (5) business days of their decision. The decision of the Hearing Officers is final and may not be appealed.

If the Provost or their designee determines that the sanctions imposed substantially vary from the range of sanctions normally imposed for similar infractions, they may then increase, decrease or otherwise modify the sanctions, conditions, or restrictions instead of returning the case to the original Hearing Officers or ordering a new hearing. If the Provost or their designee modifies the sanctions, conditions, or restrictions without returning the case to the original Hearing Officers, they must notify the student in writing of the outcome within five (5) business days of their decision. The decision of the Provost or their designee is final and cannot be appealed.

If the Provost or their designee returns the case to the original Hearing Officers, the Hearing Officers may increase, decrease, or otherwise modify the findings, sanctions, conditions, or restrictions. The Title IX Coordinator will notify the student of the outcome within five (5) business days of the Hearing Officers' decision. The decision is final and may not be appealed. If a new hearing is ordered, all hearing procedures in Part IV, Section C(3)(e), will be followed. The Title IX Coordinator will notify the Complainant and Respondent of the outcome within five (5) business days of their decision. The decision of the Hearing Officers is final and may not be appealed.

In cases in which the error cannot be cured by the original Hearing Officers, the Provost or their designee may order a new hearing with a new panel of Hearing Officers.

After the findings and sanctions become final and all appeals, if any, are exhausted, the Complainant shall be advised that if the complained of activity persists, they should contact the Title IX Coordinator. Likewise, in the event the Complainant believes retaliation for filing a complaint has taken place, they should contact the Title IX Coordinator.

The Title IX Coordinator will follow up with the Complainant within sixty (60) calendar days after conclusion of the matter to ensure that the complained of behavior has ceased.

## E. Non-Title IX Sexual Misconduct Hearing Procedure

Section E sets forth the Hearing Procedure for Non-Title IX Sexual Misconduct. The Hearing Procedure for Title IX Sexual Misconduct is set forth in System Regulation 07.06.A and its Attachment 2.

**1. Prehearing/Formal Allegations Assigned**

Once the investigation is complete, if the complaint is not otherwise resolved, the Complainant and the Respondent will be given notice of a pre-hearing meeting. Should the Complainant or the Respondent not participate in the pre-hearing meeting, the disciplinary process may continue without their participation. During this meeting, the Complainant and the Respondent will be given the opportunity to review the investigation report, relevant evidence, and other documents to be used in the hearing. Other documents may include Complainant's allegations, list of potential Hearing Officers, and hearing script. Following the pre-hearing, the Complainant and the Respondent will be notified of a date, time, and location of the hearing.

While the Complainant and the Respondent may identify errors in their own statements during the pre-hearing, they are not able to add additional information to the investigation report unless that information, in the judgment of the Title IX Coordinator, was unavailable during the investigative process and is pertinent to the complaint. If a Complainant or Respondent discovers new, previously unavailable information during the time after the pre-hearing but before the hearing, the party should inform the Title IX Coordinator immediately. If the new information is pertinent to the consideration of the complaint, the Title IX Coordinator will determine whether the new information should be included in the investigation report or presented verbally during the hearing. If there is new evidence introduced, the Complainant and the Respondent will be given the opportunity to provide a response to any such evidence that will be presented in the hearing.

The Title IX Coordinator or their designee will schedule the hearing no sooner than five (5) business days from the date of the last pre-hearing meeting. The five-day period can be waived by the Title IX Coordinator with agreement by the involved Parties.

**2. Hearing**

After notice has been given to the Complainant and the Respondent, the University may proceed to conduct a hearing and render a finding of Responsible or Not Responsible for the Respondent's alleged misconduct and, in the event of a responsible finding, impose appropriate sanctions, conditions, or restrictions. The Provost or their designee shall appoint a panel of three (3) Hearing Officers to conduct the hearing. All persons serving as Hearing Officers shall be oriented and trained to adjudicate a Sexual Misconduct case in accordance with this Student Handbook. If there is a conflict of interest, or appearance thereof, with one of the selected Hearing Officers, that person will recuse themselves and the Provost or their designee shall appoint another person to the panel. Additionally, both the Complainant and the Respondent may raise issues of conflicts of interest with regard to the potential Hearing Officer panel to the Provost or their designee within three (3) business days after notice has been given to the Parties of the panel members. The Provost or their designee will evaluate these issues and resolve them accordingly. No party has a right to disqualify a Hearing Officer panel member absent a demonstrated bias.

The hearing may be held and a decision or recommendation made, regardless of whether the Complainant or the Respondent fail to respond or fail to attend the hearing. Should the Complainant or the Respondent fail to respond or fail to attend the hearing, the Hearing Officers may consider the available information and render a decision.

Hearings are closed to the public. Both the Complainant and Respondent have the right to be present at the hearing; however, they do not have the right to be present during the deliberation of the Hearing Officers. Arrangements can be made so that Complainant and Respondent do not have to be in the hearing room at the same time. To request changes in the scheduled hearing time, the parties should contact the Title IX Coordinator not less than five (5) business days prior to the scheduled hearing.

During the hearing, the Title IX Coordinator or designee presents the allegations, investigation report, evidence, witnesses, and questions for deliberation in the hearing. The Hearing Officers may question the Title IX Coordinator, Title IX Investigator, Complainant, Respondent, and any witnesses. The Complainant and Respondent do not have the right to question each other nor witnesses directly but may do so through the Title IX Coordinator or their designee. The Complainant and Respondent have the right to add or make additional comments about the facts of the complaint. Should new evidence be presented without prior discussion with the Title IX Coordinator, the hearing may be halted to consider the inclusion of this information. Impact statements will also be halted if they are shared prior to the sanctioning phase of the hearing. In the event the Hearing Officers remove a student due to misconduct in the hearing process, the alleged misconduct in the hearing process will be forwarded to the appropriate student conduct administrator, who will follow the conduct process in Part II of this Student Handbook.

Following the hearing, the Hearing Officers will deliberate and will render a finding of responsible or not responsible for the Respondent's alleged misconduct as well as decide any sanctions, conditions, or restrictions if applicable. Any findings of the investigation will be based upon a preponderance of the evidence, which means more likely than not. The Hearing Officers will inform the Complainant and the Respondent in writing within five (5) business days of their decisions.

Either the Complainant or Respondent may utilize the Appeal Procedures.

## F. Pregnancy

Discrimination based on pregnancy is a form of discrimination based on sex. Women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all educational opportunities as other persons not so affected but similar in their ability or inability to participate in education programs or activities.

If a pregnant or parenting student feels that they require flexibility or an accommodation in order to be successful at TTUHSC, it is the student's obligation to make a request initially through their appropriate school's student affairs personnel. Students requesting a pregnancy or parenting related accommodation should do so as soon as they become aware that one may be needed. If the student and school are unable to come to a mutually agreeable decision in relation to reasonable flexibility and adjustments, the student should contact the TTUHSC Title IX Coordinator. The Title IX Coordinator will consult with the student and school administrators to begin the interactive process and determine reasonable flexibility and adjustments.

If a student disagrees with the determination or proposed accommodation after engaging in the interactive process, the student may file a complaint with the Title IX Coordinator.

In certain situations, if there is a medical condition due to pregnancy or childbirth, it may be protected under the Americans with Disabilities Act (ADA), entitling the student to a reasonable accommodation. Accommodation requests due to pregnancy-related complications should be directed to Student Disability Services.

# PART V: STUDENT RECORDS

## A. GENERAL POLICY

Policies and procedures concerning student records are based on respect for the privacy of the individual. To minimize the risk of improper disclosure, academic records are maintained separately from disciplinary records. During the time of disciplinary suspension or expulsion, the notice is placed in the student's permanent file. The conditions for access to each are set forth in the Student Handbook and complies with federal and state statutes and with registered student organization guidelines. The procedures set forth below apply to all persons formerly or currently enrolled at Texas Tech University Health Sciences Center.

## B. ADDRESS OF RECORD

Students must maintain accurate permanent and local addresses with the Office of the Registrar. Addresses are used for various purposes including student billing and official state and federal reporting. Maintaining an accurate address and telephone number is also important for use by university officials and/or student organizations. Students will receive an email twice a year prompting them to review the address TTUHSC has on file. Students can update their address through the WebRaider Portal under "My Personal Information" or "Action Items".

Students are also required to maintain accurate Emergency Contact information with current emergency contact name, address, and phone number in the event that it is necessary for the school or the University to contact them.

## C. STUDENT ACCESS TO EDUCATIONAL RECORDS

All current and former students of the university have the right to access their educational records as provided by law. The Family Educational Rights and Privacy Act (FERPA) affords eligible students certain rights with respect to their education records. An "eligible student" under FERPA is a student who is 18 years of age or older or who attends a postsecondary institution. These rights include:

1. The right to inspect and review the student's education records within 45 days after the day Texas Tech University Health Sciences Center receives a request for access. A student should submit to the Office of the Registrar a request by completing and submitting HSC OP 77.13 Attachment B, which identifies the records the student wishes to inspect. The school official will make arrangements for access and notify the student of the time and place where the records may be inspected. If the records are not maintained by the school official to whom the request was submitted, that official shall advise the student of the correct official to whom the request should be addressed.

    a. Generally, if the education record is covered under FERPA, the student may inspect or review the education record at the Office of the Registrar, but does not have the right to receive copies of the education record unless a student is effectively prevented from onsite inspection or review of their education record. Records may be viewed in person or through the use of online sources, i.e. Zoom or Microsoft Teams. If the student does not have the capability to view the records in person or via online, they may then have a right to receive copies of the education record at the student's expense after evaluation of the circumstances by the Office of the Registrar.

b. Copies of academic records or transcripts will not be released for students who have a delinquent or unpaid financial obligation to the University, have a "hold" at the University, or have an unresolved disciplinary action pending at the University, provided that applicable law does not otherwise require disclosure of the records.

2. The right to provide written consent before the university discloses personally identifiable information (PII) from the student's education records, except to the extent that FERPA authorizes disclosure without consent.

   The school discloses education records without a student's prior written consent under the FERPA exception for disclosure to school officials with legitimate educational interests. A school official is: a person employed by Texas Tech University Health Sciences Center in an administrative, supervisory, academic, research, or support staff position (including law enforcement unit personnel and health staff); a person serving on the board of trustees; or a student serving on an official committee, such as a disciplinary or grievance committee. A school official also may include a volunteer or contractor outside of the Texas Tech University Health Sciences Center who performs an institutional service of function for which the school would otherwise use its own employees and who is under the direct control of the school with respect to the use and maintenance of PII from education records, such as an attorney, auditor, or collection agent or a student volunteering to assist another school official in performing their tasks. A school official has a legitimate educational interest if the official needs to review an education record in order to fulfill their professional responsibilities for the Texas Tech University Health Sciences Center.

3. The right to file a complaint with the U.S. Department of Education concerning alleged failures by the Texas Tech University Health Sciences Center to comply with the requirements of FERPA. The name and address of the Office that administers FERPA is:

   Student Privacy Policy Office, U.S. Department of Education, 400 Maryland Avenue, SW Washington, DC 20202

4. A student may waive the right of access to confidential letters of recommendation in the areas of admissions, job placement and receipt of awards.

5. Personally-identifiable information such as rank in class, personal conduct, grade point average, academic progress, etc., shall not be released to non-authorized personnel without the written consent of the student.

## D. Records Not Accessible to Students

The following are records not accessible to students:

1. Records of instructional, administrative and educational personnel that are kept in the sole possession of the maker, are used only as a personal memory aid, and are not accessible or revealed to any other person except a temporary substitute for the maker of the record;

2. Records of the Texas Tech Police Department, subject to the provisions of 34 C.F.R. 99.8;

3. Records relating solely to an employee of TTUHSC in their capacity as an employee that are not available for any other purpose, unless the student is employed as a result of their status as a student;

4. Student medical and counseling records created, maintained, and/or used only in connection with providing medical treatment or counseling to the student, that are not disclosed to anyone other than the individuals providing the treatment; and

5. Alumni records or other records that contain information about an individual after they are no longer a student at that agency or institution (e.g., information gathered on the accomplishments of alumni).

## E. Disclosure of Educational Records

FERPA permits the disclosure of personally-identifiable information from students' education records, without consent of the student, if the disclosure meets certain conditions found in §99.31 of FERPA. Except for disclosures to school officials, disclosures related to some judicial orders or lawfully issued subpoenas, disclosures of directory information, and disclosures to the student, §99.32 of FERPA requires the institution to record the disclosure. Eligible students have a right to inspect and review the record of disclosures. Texas Tech University Health Sciences Center may disclose personally-identifiable information from the education records without obtaining prior written consent of the student:

1. To other school officials, including faculty, within Texas Tech University Health Sciences Center whom the school has determined to have legitimate educational interests. This includes contractors, consultants, volunteers, or other parties to whom the school has outsourced institutional services or functions, provided that the conditions listed in §99.31 (a)(1)(i)(B)(3) – (a)(1)(i)(B)(2) are met. (§99.31 (a)(1))

2. To officials of another school where the student seeks or intends to enroll, or where the student is already enrolled if the disclosure is for purposes related to the student's enrollment or transfer, subject to the requirements of §99.34. (§99.31 (a)(2))

3. To authorized representatives of the U. S. Comptroller General, the U.S. Attorney General, the U.S. Secretary of Education, or State and local educational authorities, such as a State postsecondary authority that is responsible for supervising the university's state-supported education programs. Disclosures under this provision may be made, subject to the requirements of §99.35, in connection with an audit or evaluation of federal-or-state-supported education programs, or for the enforcement of or compliance with federal legal requirements that relate to those programs. These entities may make further disclosures of PII to outside entities that are designated by them as their authorized representatives to conduct any audit, evaluation, or enforcement or compliance activity on their behalf. (§§99.31 (a)(3) and 99.35)

4. In connection with financial aid for which the student has applied or which the student has received, if the information is necessary to determine eligibility for the aid, determine the amount of the aid, determine the conditions of the aid, or enforce the terms and conditions of the aid. (§99.31 (a)(4))

5. To organizations conducting studies for, or on behalf of, the school, in order to: (a) develop, validate, or administer predictive tests; (b) administer student aid programs; or (c) improve instruction. (§99.31 (a)(6))

6. To accrediting organizations to carry out their accrediting functions. ((§99.31 (a)(7))

7. To parents of an eligible student if the student is a dependent for IRS tax purposes. (§99.31 (a)(8))

8. To comply with a judicial order or lawfully issued subpoena. (§99.31 (a)(9))

9. To appropriate officials in connection with a health or safety emergency, subject to §99.36. (§99.31 (a)(10))

10. Information the school has designated as "directory information" under §99.37. (§99.31 (a)(11))

11. To a victim of an alleged perpetrator of a crime of violence or a non-forcible sex offense, subject to the requirements of §99.39. The disclosure may only include the final results of the disciplinary proceeding with respect to that alleged crime or offense, regardless of the finding. (§99.31 (a)(13))

12. To the general public, the final results of a disciplinary proceeding, subject to the requirements of §99.39, if the school determines the student is an alleged perpetrator of a crime of violence or non-forcible sex offense and the student has committed a violation of the school's rules or policies with respect to the allegation made against him or her. (§99.31 (a)(14))

13. To parents of a student regarding the student's violation of any Federal, State, or local law, or of any rule or policy of the school, governing the use of possession of alcohol or a controlled substance if the school determines the student committed a disciplinary violation and the student is under the age of 21. (§99.31 (a)(15))

## F. Student's Request to Amend Records

Students have the right to request an amendment of their education records and information directly relating to them. This section does not include procedures for students challenging individual grades. Grade appeal and grievance procedures are set forth in the individual Student Handbooks for each School and the TTUHSC Student Handbook/Code of Professional Conduct. The request is limited to inaccurate, misleading or otherwise inappropriate records and information. The procedures set forth below shall be followed to amend education records.

1. Any student who believes that their education records are inaccurate or misleading, or that the records violate their privacy rights, must first request an informal discussion regarding the questionable item with the Office of the Registrar, who may or may not honor the request.

2. If the result of the informal discussion with the Office of the Registrar is not satisfactory to the student, and the student still wishes to have the record corrected, the student should submit a Student Request to Amend Education Records form HSC OP 77.13 to the Associate Provost or their designee. The request shall clearly identify the part of the record the student believes should be changed, and specify why it should be changed, i.e., why the student believes the record is inaccurate, misleading or in violation of their privacy rights. [Note: The substantive judgment of a faculty member regarding a student's work, expressed in grades or evaluations, is not within the purview of the right to seek amendment of education records under this section. This section does not include procedures for students challenging individual grades. Grade appeal and grievance procedures are set forth in the individual student handbooks for each School and the TTUHSC Student Handbook/ Code of Professional Conduct.]

3. After receiving the written request from the student for a change in their education records, the Associate Provost or their designee shall request, and the Office of the Registrar shall provide, a written statement that explains why the request for the change in the education record was denied at the informal stage. After reviewing the request by the student and the response of the Office of the Registrar, the Associate Provost for Student Affairs or designee will provide written notification to the student whether or not TTUHSC will implement the change. If not, the Associate Provost for Student Affairs or designee will notify the student of the right to a hearing to challenge the information believed by the student to be inaccurate, misleading, or in violation of the student's rights.

4. Upon receiving a written request from the student for a hearing, the Associate Provost for Student Affairs or designee shall arrange for a hearing and provide written notice to the student reasonably in advance of the date, time and place of the hearing. The hearing will be conducted according to the following procedures:
    a. The hearing shall be conducted by a hearing official or committee appointed by the Provost or their designee. Such individuals must have no direct interest in the outcome of the case and shall decline to serve if a conflict of interest, or an appearance of a conflict of interest, exists with either the student or the Office of the Registrar.
    b. At least five (5) days prior to the date scheduled for the hearing, the student and the Office of the Registrar, shall submit to each other, as well as to the hearing official or committee, any and all pertinent documents and a list of witnesses and advisors who are to be involved in the hearing process. The student may, at their own expense, be assisted or represented by one or more individuals of their own choice, including an attorney. If the student has an advisor, the Office of General Counsel shall represent the University. The student and the Office of the Registrar are each responsible for presenting relevant information. Therefore, the advisors and attorneys for the Parties are not permitted to speak or participate directly in the hearing.
    c. At the hearing, the student shall have the opportunity to present evidence to support their position that the content of the relevant educational record is inaccurate, misleading, or otherwise in violation of the privacy rights of the student.
    d. Any additional information regarding the hearing procedures will be provided to the student when notified of the right to a hearing.
    e. Within seven (7) business days after the conclusion of the hearing, the hearing officer or chair of the hearing committee, if applicable, will transmit the decision in writing to the student, the Office of the Registrar, and the Associate Provost for Student Affairs or designee. The decision must include a summary of the evidence and the reasons for the decision. If, as a result of the hearing, the hearing official or committee determines that the information in the education record is not inaccurate, misleading, or otherwise in violation of the privacy rights of the student, the student will be notified of the right to place a statement in the record contesting the information in the record or stating why the student disagrees with the decision of the agency or institution, or both. Any statement provided by the student shall be maintained with the contested portion of the record for as long as the record is maintained. In the event the contested portion of the record is later requested, the statement shall be disclosed with the record to the extent it pertains to the contested portion.

## G. Release of Student Directory Information

The following student information is considered Texas Tech University Health Sciences Center Directory Information:

1. Student Name
2. Permanent and Local Addresses
3. Classification
4. Major Field of Study
5. Dates of Attendance
6. Degrees, Awards, and Honors Received
7. Degree Conferral Dates
8. Enrollment Status

9. Participation in Officially Recognized Sports and Activities
10. Previous Institution's Attended
11. Postgraduate Training/Clinical sites for R.N., M.D., or Ph.D. graduates and degree candidates

This information will be released by various campus offices periodically, or on request, unless the student stipulates that directory information (as defined above) be withheld. Students may request that directory information be withheld by submitting a completed Student Consent to Release Education Records, or by restricting personal directory information at WebRaider.ttuhsc.edu on the MyTech tab. Students should select the Update Confidentiality/Directory Profile Status link located under Action Items and check the box next to their name.

## H. Destruction of Records

The university constantly reviews the educational records it maintains and periodically destroys certain records. The university will not destroy records if prohibited by state or federal law. The student's basic scholastic record is kept and maintained permanently in the Office of the Registrar. Disciplinary records are maintained for at least seven years in the conduct office of each School and/or in the institutional reporting system, Maxient. Student Disability Services records are maintained for three years after the last date of enrollment.

## I. Letters of Recommendation

1. Students may review recommendations used in application for employment or for admission to any educational agency or institution, or information concerning honors awarded, except when the student has waived the privilege of examination.

2. Under the Family Educational Rights and Privacy Act 1974, as amended, the student does not have access to confidential letters and statements of recommendation which were placed in the educational records before January 1, 1975, if the letters or statements are used for purposes for which they were specifically intended.

## J. Medical Records

Medical records are maintained for students seen by a Student Health Services provider. Information contained in the medical record is completely confidential and will not be released to another person or institution without written permission of the student unless otherwise authorized by law. Students needing to request a copy of their medical records may contact Student Health Services at (806) 743-2860.

# PART VI. REGISTRATION OF STUDENT ORGANIZATIONS

## A. CONDITIONS FOR REGISTRATION

1. Students wishing to register a new student organization with the Texas Tech University Health Sciences Center must first submit an Intent to Form Request found on HSC Net under the FORMS tab. The purpose and activities of the organization shall be lawful and not in conflict with the regulations published by the Office of Student Life. After submitted, the student will be contacted by a staff member of the Office of Student Life to schedule a training. Once the student has attended a training the student will be able to register the new organization on HSC Net. HSC Net is facilitated and managed by the Office of Student Life.

2. The registration shall contain, but not be limited to, the following information:
   a. A statement of the organization's purpose
   b. Roster of all current members, officers, and advisor(s)
   c. Any present relation the organization may have to any other local, state, or national organization
   d. Contact information for the organization's officers (President and Treasurer Required)
   e. Contact information for a full-time faculty or staff advisor
   f. A copy of the current organization's constitution/bylaws
   g. A copy of the constitution/bylaws of any related organization, if any

3. The student organization constitution and/or bylaws should include a minimum of these areas:
   a. Name & Purpose
   b. National & Affiliate Organizations
   c. Membership Requirements
   d. Officer List & Duties (President and Treasurer Required)
   e. Officer Election & Removal Processes
   f. Financial Procedures
   g. Faculty/Staff Advisor Responsibilities
   h. Annual Programs/Activities

4. Membership in the organization shall be open only to students enrolled at Texas Tech University Health Sciences Center without regard to race, color, religion, sex, sexual orientation, gender identity, gender expression, disability, age, citizenship, veteran status, or national origin, except in cases of designated fraternal organizations which are exempted by federal law from Title IX regulations concerning discrimination on the basis of sex. Faculty and staff may hold adjunct memberships in accordance with the organization's constitution.

5. The organization shall not duplicate the purposes and functions of a previously registered organization, unless need for such duplication is substantiated.

6. All funds allocated to the organization from TTUHSC controlled sources must be maintained in a TTUHSC account.

7. The organization shall show promise of effectively meeting its stated purpose, be free from control by any other organization, and be lawful and peaceful in its activities.

8. The organization shall not use the name of the Texas Tech University Health Sciences Center, logotype, or symbols of TTUHSC as part of its name or in its publications. In addition, the organization shall not advertise or promote events or activities in a manner, which suggests sponsorship by TTUHSC. Requests to use logos or symbols protected by TTUHSC, Texas Tech University or the Texas Tech University System shall be submitted to brandapproval@ttuhsc.edu.

9. Registration of an organization results from compliance with these regulations; it does not imply TTUHSC approval of the organization or its activities.

## B. Faculty or Staff Advisor

Each registered student organization shall have a TTUHSC full-time faculty or staff advisor to be available to the officers and members for consultation about the organization's affairs, to attend organization meetings and functions as often as possible, to certify the expenditures of the organization by reviewing credits and debits in HSC Net to offer suggestions regarding the operations of the organization and to oversee adherence to TTUHSC regulations and the organization's constitution and bylaws. The advisor will be required to ensure that the current officers are updated and identified in the HSC Net student organization roster.

## C. Conditions for Maintaining Registration

In order to maintain its registration, a student organization shall comply with the following requirements:

1. The organization shall update changes in officers and advisor within 10 business days on their HSC Net organization roster throughout the year.

2. The organization shall submit the annual re-registration on HSC Net by the designated deadline each spring for the Office of Student Life to review. All updates made to documents or processes, such as revisions to constitution or bylaws, statement of purpose, or membership requirements will need to be submitted during this process.

3. The organization shall maintain its funds in accordance with Section A of this part and be in good standing with the Texas Tech University Health Sciences Center.

4. The organization shall demonstrate by its activities that it is conducting business to achieve its purpose as stated on the original application or Intent to Form Request.

5. The organization shall conduct its affairs in a lawful manner, in accordance with the constitution and bylaws it has on file, and in accordance with applicable Texas Tech University Health Sciences Center regulations and state statutes.

6. The organization shall be responsible for the observance of all applicable TTUHSC regulations by off-campus individuals or organizations whose appearance on campus is sponsored by the organization.

7. The Office of Student Life may withdraw the registration of an organization for non-compliance with university policies and procedures.

## D. Denial of Registration

1. No student organization will be officially registered with the Texas Tech University Health Sciences Center if the Office of Student Life determines that the organization's actions or activities are detrimental to the educational purposes of the University or not in accordance to the Student Handbook.

2. If registration is denied, the designated president and advisor of the applying organization shall be notified of the decision by the Office of Student Life in writing. The applying organization may appeal in writing to the Associate Provost for Student Affairs within five (5) business days from the date of the denial letter. The decision of the Associate Provost for Student Affairs is final.

---

# Part VII. Use of University Space, Facilities, and Amplification Equipment

## A. Expressive Activities

1. TTUHSC recognizes freedom of speech and expression as a fundamental right and seeks to ensure free, robust, and uninhibited debate and deliberation by students enrolled at TTUHSC as well as other persons.

2. Expressive activities on the TTUHSC campus are governed by Texas Tech University System Regulation 07.04, Freedom of Expression.

3. In the event of any conflict between this Section VII(A) and any other provision of this Handbook, the provisions of this Section shall control.

## B. Other Uses of TTUHSC Space and Activities

1. The provisions of this Section VII(B) shall apply to all uses of TTUHSC facilities for purposes other than expressive activities conducted in outdoor common areas.

2. The space and facilities of the University are intended primarily for the support of the instructional program of the institution. Second priority is given to programs sponsored and conducted by university academic and administrative departments or organizations affiliated with those departments. Beyond these two priorities, use of campus space and facilities is permitted and encouraged for activities which are intended to serve or benefit the entire University community.

3. TTUHSC buildings, grounds, or property may not be used by individuals or organizations not connected with TTUHSC.

4. Outside individuals or groups who are not faculty, staff or a currently enrolled student may attend functions held on TTUHSC property, but to be eligible for use of campus facilities, the function must be sponsored or cosponsored by, and affiliated with, a recognized TTUHSC department or registered student organization. Sponsorship and/or co-sponsorship minimally include, but are not limited to, participation in, planning, coordination, and implementation directly by members of the sponsoring organizations. Sponsors are directly responsible for ensuring that activities and events comply with TTUHSC requirements for liability insurance, hold- harmless agreements, financial responsibility for property damage, etc.

5. Permission to use campus space facilities may be granted only by the offices designated by TTUHSC OP 61.07, Use of TTUHSC Premises and Amplification Equipment. A department, student or registered student organization may not reserve space or facilities on campus and permit it to be used by a non-registered organization or off-campus group or person.

    a. Students or registered student organizations desiring grounds use may be required to provide evidence of appropriate liability insurance in accordance with recommendations from the General Counsel's Office, Risk Management Office, other University departments or others as necessary prior to the premises requested being approved.

    b. Participants in, and/or sponsors for, events may be required to sign a "Hold Harmless" release.

    c. If the use of TTUHSC grounds is for programs or activities involving minor children, the sponsoring group must comply with Texas Education Code § 51.976, which requires sexual abuse and child molestation training, certification, and reporting for program employees. Documentation of timely reporting to the Texas Department of State Health Services of such training should be received before reservation of space or facility will be confirmed.

6. Reservations must be made for the use of TTUHSC premises and must be in accordance with TTUHSC OP 61.07, Use of TTUHSC Premises and Amplification Equipment. The term "TTUHSC premises" includes all land, buildings, facilities and other property in the possession of or owned, used or controlled by TTUHSC (including adjacent streets and sidewalks).

# PART VIII. SOLICITATIONS, ADVERTISEMENTS, AND PRINTED MATERIALS

Solicitation, sales, and services on university premises or in university-owned or university-controlled buildings are prohibited without prior written approval from the Office of Student Life. This includes financial planners, mortgage vendors and other financial services. The distribution of advertising leaflets or handbills or the use of sound trucks and equipment to promote sales on university premises is also prohibited without prior approval from the Office of Student Life.

# PART IX. STUDENT TRAVEL POLICY

## A. STUDENT TRAVEL POLICY

1. TTUHSC O.P. 77.08 regulates any travel undertaken by one or more students presently enrolled at TTUHSC to an activity or event that is located more than 25 miles from the campus of TTUHSC, including international travel. This Operating Policy (OP) applies to any event or activity which is organized, sponsored and/or funded by TTUHSC, is undertaken using a vehicle owned or leased by the university or is a required event or activity by a student organization registered at TTUHSC. In addition, any international travel undertaken for academic credit, including courses and programs offered abroad, is regulated by TTUHSC O.P. 10.29, International Programs for Students.

2. Modes of travel by students to events or activities as defined above include:

a. personally-owned vehicles;
b. commercial vehicles, including but not limited to rental cars, vans, chartered buses;
c. commercial airlines; and
d. use of TTUHSC-owned vehicle.

3. The purpose of this policy is to help minimize the risks of liability connected with motor vehicle travel by TTUHSC faculty, staff and students. The policy applies to the use of the above modes of travel in any activities directly related to the academic, research, and/or administrative responsibility of the department involved. This policy also applies to travel undertaken by one or more students presently enrolled at TTUHSC to reach a university related activity located more than 25 miles from TTUHSC. It applies to travel required by a registered student organization. This HSC OP does not create a claim or cause of action against TTUHSC or its employees, and TTUHSC retains all defenses to any such action including, but not limited to, sovereign immunity.

# PART X. MISCELLANEOUS POLICIES

## A. MISCELLANEOUS POLICIES

Policies and procedures for certain items, including, but not limited to, academic advisement, academic review, appeals, attendance in academic courses, auditing courses, clinical attire, grades, promotions/dismissal, grievance procedures, and student employment may be referenced in the various Schools' student handbooks and/or catalogs.

1. **Absences**. Please refer to the individual School's catalogs and/or handbooks for more specific details relating to your program.

2. **Academic Requirements.** Academic requirements vary with each TTUHSC School and particular degree program in which the student is enrolled. Students should consult with their respective School's academic/program advisor and/or School's catalog for specific details.

3. **Admissions and Applicants.** The educational policies of the TTUHSC are founded upon the regulations of the Board of Regents of the Texas Tech University System. TTUHSC is an upper-level, graduate, and professional study institution. The application and admissions policies for TTUHSC are outlined in the individual Schools' catalogs. Most programs at TTUHSC have a deadline for receipt of applications and supporting documents. These deadlines vary by program and application year. Applicants are advised to contact the program to which they are seeking admission for specific deadline dates.

4. **Adding and Dropping Courses.** Consult with your academic department for deadline dates for adding and/or dropping courses. Students should make an appointment with their advisor to complete appropriate documentation. Students dropping a course to the point of zero hours of enrollment are considered to be withdrawing from the school's program. Please refer to the individual Schools' catalogs and/or handbooks for more specific details relating to your program.

5. **Affiliation**. The Student Government Association is the official organization representing students. Students may identify with off-campus programs and activities as individuals, but not as representatives of the student body.

6. **Attendance**. The faculty member responsible for the course determines attendance requirements for each course. A student who fails to attend any class for any reason is responsible for the material presented in class, assignments, examinations, announcements, etc. to the same extent as though the student had attended the class. Please refer to the individual School's catalogs and/or handbooks for more specific details relating to your program.

7. **Bacterial Meningitis**
   a. ***General.*** Meningococcal disease is a potentially life-threatening infection caused by the bacterium Neisseria meningitidis. Bacterial meningitis is an inflammation of the membranes that surround the brain and spinal cord. This disease affects approximately 3000 Americans each year, including 100-125 people on college campuses, leading to 5-15 deaths per year among college students.
   b. ***Risks and Exposures****.* The organism is spread from person-to-person through the exchange of respiratory and throat secretions such as coughing and kissing. Sharing cigarettes, water bottles, eating utensils and food, may increase your exposure. Resident Hall-style living may also play a role as crowded environments facilitate the spread of the infection.
   c. ***Symptoms and Diagnosis.*** Early diagnosis is important. Your healthcare provider may use a combination of clinical symptoms and laboratory tests to diagnose the disease. Seek medical attention immediately if one or more of these symptoms appear:
      i. High fever
      ii. Severe Headaches
      iii. Vomiting
      iv. Light sensitivity
      v. Stiff neck
      vi. Nausea
      vii. Lethargy
      viii. Seizures
      ix. Confusion and sleepiness
      x. Rash or purple patches on skin
   d. **Possible Treatment and Consequences If NOT Treated**. Antibiotic treatment may be effective if exposure and disease is detected early. Possible consequences of the dis- ease, include, but are not limited to:
      i. Permanent brain damage
      ii. Kidney failure
      iii. Learning disability
      iv. Gangrene
      v. Coma
      vi. Convulsions
      vii. Hearing loss
      viii. Blindness
      ix. Limb damage that may require amputation
      x. Death

e. **Prevention.** Vaccinations may be effective against 4 of the 5 most common bacterial types that cause 70% of the disease in the United States. Vaccinations typically take 7-10 days to become effective, with protection lasting 3-5 years. The vaccination is generally safe--most common side effects may include redness and minor pain at the injection site for up to two days.

f. **Information.** If you have more questions, contact:
   i. Your healthcare provider
   ii. Your local or regional Texas Department of Health
   iii. TTUHSC Family Practice Clinic at 806-743-2757
   iv. Visit these web sites for more information - http://www.cdc.gov/ncird/dbd.html or www.acha.org

8. **Immunizations.** In order to protect the health of our students and the health of the patients with whom they come in contact, TTUHSC requires **all entering students** to provide documentation of all immunizations as listed below. Immunization requirements are based on regulations, guidelines and recommendations available as of October, 2012 from the Texas Administrative Code (TAC), Texas Department of State Health Services (DSHS), the U.S. Centers for Disease Control and Prevention (CDC), and the U.S. Advisory Committee for Immunization Practices (ACIP). The meningitis requirement must be sent in immediately and all other requirements must be met prior to orientation. The student is responsible for all associated costs. For those who do not comply with COVID vaccine mandates, it may impact the Covered Individual's ability to provide care, obtain required clinical hours, and maintain credentialing.
   a. **Medical and Religious Exemptions.** Texas Administrative Code (TAC) §97.62 describes the conditions under which individuals can seek exemptions from Texas immunization requirements. Exclusions from compliance are allowable on an individual basis for medical contraindications, active duty with the armed forces of the United States, and reasons of conscience, including a religious belief.
   b. A person claiming exclusion for reasons of conscience, including a religious belief, from a required immunization may only obtain the affidavit form by submitting a request (via online form, mail, fax or hand-delivery) to the department. The request must include following information:
      i. Full name of student
      ii. Student's date of birth (month/day/year)
      iii. Complete mailing address, including telephone number
      iv. Number of requested affidavit forms (not to exceed 5).
   c. View the Request for Exemption from Immunizations for Reasons of Conscience for written requests.
   d. Affidavit form requests will be processed and mailed within one week from the receipt of the request. If additional information is needed in order to process the affidavit, you will be notified.
   e. The vaccine exemption forms for reasons of conscience including a religious belief are only for students claiming a vaccine exemption for the first time after 9/1/03. If you've submitted a religious exemption prior to 9/1/03, you are grandfathered under the old law and do not need a new form.

9. **Tuberculosis Surveillance.** Tuberculosis surveillance for Covered Individuals is based on current U.S. Department of Health and Human Services, Centers for Disease Control and Prevention (CDC) Recommendations and Reports (December 30, 2005, 54 (#RR-17):1-147), Guidelines for Preventing the Transmission of Mycobacterium tuberculosis in Health-Care Settings.

10. **Exposure Management.** Institutional management of exposure to: (1) blood-borne pathogens, (2) body fluids and, (3) other miscellaneous exposures is based on regulations, guidelines and recommendations available as of October 2012 from the Texas Administrative Code (TAC), Texas Department of State Health Services (DSHS), the U.S. Centers for Disease Control and Prevention (CDC). For exposure-related incidents, students must notify the Office of Institutional Health at (806) 743-4020 or go to https://www.ttuhsc.edu/institutional-health/ for information.

11. **Working with Affiliated Entities-Student Drug Screenings, HSC OP 77.15**
    a. For purposes of this policy the term "Student" does not include residents in the Schools of Medicine or Jerry H. Hodge School of Pharmacy.
    b. **Background**
        i. TTUHSC enters into affiliation agreements with various health care clinical entities ("Affiliated Entities"), such as hospitals and other facilities, in order to provide clinical experience opportunities for its students enrolled in TTUHSC clinical education programs.
        ii. Affiliated Entities may establish more stringent standards for students who wish to do a clinical rotation at the affiliated entity, than those required by TTUHSC as part of its admission process. Affiliated Entities may require students, among other things, to undergo and satisfactorily pass additional background checks and/or drug screenings as a pre-requisite to participating in a clinical rotation at the Affiliated Entity.
        iii. Clinical rotations are an essential element in certain degree programs' curricula. Students who cannot participate in clinical rotations due to a positive drug screening may be unable to fulfill the requirements of a degree program. TTUHSC schools may NOT mandate this requirement for all students. It applies solely to those students who must fulfill the requirement for participation in a clinical rotation at an Affiliated Entity.
    c. **Clinical Placement**
        i. Placements at Affiliated Entities for clinical rotations will be based on the learning objectives as defined by each program consistent with the learning objectives of each student. Determination of unacceptable results of a drug screening will be made by the Affiliated Entity. Any student placed with an Affiliated Entity that requires additional background checks and/or drug screens, who cannot meet these requirements, must discuss all available options with their School's Office of Student Affairs or their designee.
        ii. Affiliated entities may conduct their own drug screening. If the student fails the drug test and is consequently denied externship placement, s/he shall be subject to disciplinary action in accordance with the TTUHSC policies.
    d. **Responsibility of the School.** The student's school shall:
        i. Notify the student of the Affiliated Entity's requirements for a drug screen, to include the type(s) of drug screen required by the Affiliated Entity, deadlines to meet the Affiliated Entity's requirements, a list of approved drug screen testing vendors, and a completed Authorization, Attachment "A," for signature by the student.
        ii. Receive the student's drug screen test results, which shall be maintained in a confidential, locked file separate from the student's primary educational records.
        iii. Notify and ensure the Affiliated Entity that all students prior to their clinical rotation have met their drug screening requirements.
    e. **Responsibility of the Student**

i. The student shall pay for the cost of any and all drug screening required by an Affiliated Entity that is designated for student matriculation by TTUHSC provided articles b, c, d, below are met. The student shall be responsible for the cost of any necessary re-test or subsequent tests at TTUHSC designated Affiliated Entity(s) and any drug screening required by an Affiliated Entity selected for matriculation by the student.

ii. The student shall complete the drug screen prior to the deadlines provided by the school and meet the guidelines of the Affiliated Entity. Failure to complete the drug test prior to the deadlines may result in an additional expense to the student, and/or delay in, or denial of, rotation in the Affiliated Entity.

iii. The student shall use a drug screen vendor from the designated vendors provided to the student by their School and/or the Affiliated Entity. 1) Results from a vendor NOT on designated by the school and/or Affiliated Entity will not be accepted and the student shall be required to have the drug screening test(s) conducted by an approved vendor.

iv. The student will be required to sign a valid consent and authorization, Attachment "A," consenting to the drug screening and giving the vendor performing the test permission to provide the drug screen test results to the person designated by the school to receive student drug screen tests results under this policy.

f. ***Student Refusal to Consent to Drug Screen.*** Any student who fails or refuses to consent to a drug screen required by an Affiliated Entity to which the student has been assigned by their School shall be subject to disciplinary action in accordance with the TTUHSC Student Handbook/Code of Professional and Academic Conduct, the Schools' written policies, if any, and this policy.

g. **Period of Validity – Drug Screen Results**

i. Unless otherwise required by an Affiliated Entity, drug screen test results will generally be valid for the time the student is in the program within the school unless there is a break in enrollment, defined as not enrolled for one full semester.

ii. Students may be required to undergo drug screening more than once depending on the requirements of each Affiliated Entity in which the student is placed to meet their learning objectives or the number of Affiliated Entities at which the student is placed.

h. **Drug Screen Results**

i. **Diluted Specimen.** Should the vendor report that the screening specimen was diluted, thereby precluding an accurate drug screen test, the student, at their expense, will be required to complete and successfully pass a new drug screen test.

ii. **Negative Drug Screen Results.** The school which receives a student's drug screen test results, may release negative drug screen test results to the student, provided the student has signed the appropriate release form, Attachment A.

iii. **Positive Drug Screen Results**

1. A positive drug screen is any instance in which a drug screen report shows a positive test for one or more of the drugs on the panel required by the Affiliated Entity.
2. Any student with a positive drug screen will not be placed in any clinical facility pending review and outcome of appeal with the vendor.
3. The student has the right, at their expense, to request an independent review of any positive drug screen, by an independent Medical Review Officer, provided by the vendor. There will be an additional charge if review by the Medical Review Officer is requested, and the student is responsible for all costs related to this review.

4. Any appeal based on a positive drug screen is solely between the student, the Medical Review Officer and the vendor. The student's School will not become involved in the appeal of a positive drug screen. If, after review by the independent Medical Review Officer, there is no valid medical basis which would cause or contribute to the positive drug screen, the test results will stand, at which point the student will be referred to the School's Office of Student Affairs for disciplinary action in accordance with this policy and the school's written policies.

i. **Confidentiality of Records.** Drug screening reports and all records pertaining to the results are considered confidential information with restricted access to the extent allowed by law.

j. **Re-admission**

   i. Any student who is withdrawn due to a positive drug screen without medical validation will only be eligible for readmission to any TTUHSC program of study in accordance with the school's readmission policies.

   ii. If accepted for readmission after the required period of time, the student must, at their own expense, provide a negative drug test and satisfactory documentation of completion of any remedial action required by the school.

k. **Right to Change Policy.** TTUHSC reserves the right to change, modify, amend or rescind this policy in whole, or in part. at any time.

12. **Credit by Exam.** Specific credit by examination policies may be found in each of the schools' catalogs and/or student handbooks; however, the School of Nursing does not offer Credit by Exam. Pass or fail grades earned on examinations for these courses will not be considered in determining grade-point averages. TTUHSC Schools may elect not to accept credit by examination, where it is determined that such academic achievement may hinder the success on national licensure exams/certifications.

13. **Disabilities (Students).** Reference TTUHSC OP 77.14 and TTUHSC OP 51. 04.. TTUHSC complies with the American with Disabilities Act (ADA) of 1990, and as amended in 2008, Section 504 of the Rehabilitation Act of 1973, and state and local requirements regarding students with disabilities. Under these laws, no otherwise qualified individual with a disability shall be denied access to or participation in services, programs and activities of TTUHSC solely on the basis of the disability.

    a. Any student seeking accommodations on the basis of disability must apply for services as a qualified student with Student Disability Services and provide supporting documentation that substantiates a disability.

    b. Students with grievances related to discrimination on the basis of a disability should review the Student Handbook, Part IV* Anti-Discrimination. The grievance process would include the Director of Student Disability Services.

14. **Discrimination/Equal Opportunity.** No person shall be excluded from participation in, denied the benefits of, or be subject to discrimination under any program or activity sponsored by TTUHSC on any basis prohibited by applicable law, including but not limited to, race, color, national origin, religion, sex, veteran status or disability. Grievances related to discrimination on the basis of race, religion, national origin or age should be pursued through regular administrative channels. Academic problems are to be handled in the academic administrative structure culminating in review by the individual School's Dean. The individual Schools as noted in their schools' catalogs should direct non-academic student matters to HSC Student

Affairs. For more information, visit https://www.ttuhsc.edu/hsc/op/op51/op5101.pdf, *Equal Employment Opportunity Policy and Affirmative Action Plan.*

15. **Employment Grievance.** A student wishing to pursue a grievance concerning employment with the University and who has not found satisfaction or resolution with their immediate supervisor or the person in charge of that department may contact the Office of Equal Employment Opportunity in accordance with the grievance procedures outlined in the TTUHSC OP 70.10, *Non-faculty Employee Complaint and Grievance Procedures*. The procedures manual may be reviewed in the Office of Equal Employment Opportunity.

16. **Exams.** Please refer to the individual School's catalogs for more specific exam details relating to your program. Any student seeking exam accommodations on the basis of disability must apply for services as a qualified student with Student Disability Services and must provide supporting documentation of disability. Appropriate and reasonable accommodations, if any, will be determined by Student Disability Services.

17. **Financial Policies.** Students must meet all financial responsibilities due the University. The writing of checks on accounts with insufficient funds, the non-payment or delinquent payment of outstanding loans, and failure to meet any other financial obligations to the University, are considered a lack of financial responsibility. Financial irresponsibility can subject the student to action by TTUHSC, including, but not limited to, denial of registration, withholding of grades and transcripts and possible adjudication under the Code of Professional and Academic Conduct. In addition, failure to meet financial obligations to the University may result in:
    a. Cancellations of the student's registration if tuition and registration fees are not paid by the 12th class day and 20th class day (4th class day and 15th class day in summer), or if a returned check given in payment of tuition and fees is not redeemed by that time;
    b. Loss of University check writing privileges and possible criminal prosecution for writing insufficient fund checks and for failure to pick up a returned check;
    c. A hold placed on a student's academic records preventing future registration (before registering or requesting a transcript, students may check on the presence of holds on their records by contacting the Office of the Registrar); and/or,
    d. Reporting of financial problems to a credit agency or a collection agent.

18. **Grades/Grading**
    a. The instructor assigned to a course has the responsibility for determining a grade and for judging the quality of academic performance.
    b. The processing of formal appeal procedures is the responsibility of the school which administers the course. A copy of the grade appeal procedures may be found in the individual Schools' catalogs and/or handbooks. A student must file a formal written appeal within 3 days of the beginning of the next semester in accordance with the individual Schools' policy regarding student grade appeals. A grade can be formally appealed only when there is demonstrable evidence that prejudice, arbitrary or capricious action on the part of the instructor has influenced the grade. The burden of proof that such an unfair influence has affected a grade rest with the student who appeals the grade. Only final course grades may be formally appealed to the responsible academic dean. Earlier grades and other academic grievances may be discussed with

the instructor involved and with the chair of the department or division involved. After a degree has been posted, no further adjustments can be made on the record except under extraordinary circumstances as determined by the Dean of the School the student is enrolled under.

19. **Graduation Procedures**
    a. Degree requirements are published in the individual School's catalogs.
    b. Prior to graduation, all candidates for TTUHSC degrees are required to:
        i. Complete all graduation requirements set forth by the applicable School;
        ii. Complete and return to the Office of the Registrar the University's Graduation Application form in the semester before anticipated graduation (the student's "diploma name" as requested in the Graduation Application form is printed on their diploma, and information provided by the student is used in commencement programs);
        iii. Be registered in the semester the certificate or degree is to be conferred unless the student is granted an exception by the dean of their school;
        iv. Federal Student Aid Exit Counseling must be completed by students who have received financial assistance, which must be repaid after graduation.

20. **Medical Services Fee and Student Health Insurance**
    a. TTUHSC provides health services to students who are currently enrolled and have paid the Medical Services Fee as part of their tuition and fees. To receive health services, students must present their student I.D. card at the time of their appointment. Students who also have private insurance will need to submit their receipt for the co-pay charged at the appointment to their insurance company for reimbursement.
        i. Each TTUHSC campus has designated facilities that students can use when needing health care services. Each location offers a range of services from medical checkups and mental health services to wellness support and health education. Students will find information about each facility and covered services at the following link: https://www.ttuhsc.edu/student-affairs/health.aspx. The Medical Services Fee covers only those services listed on the aforementioned webpage. All other charges incurred are the students' responsibility.
        ii. If a student receives a bill from the Health Sciences Center for services covered by the Medical Services Fee, they should contact the Office of Student Life at (806) 743-2302.
    b. **Clinic Procedures.** Please call to make an appointment. If you need to be seen for a sudden illness, please call that day as early as possible. If you need to be seen after clinic hours, call your campus's clinic phone number and ask to leave a message for the on-call physician. When you check in, please inform the receptionist that you are a TTUHSC student. If you come to the clinic without an appointment, it may be necessary for you to wait for a physician. Immunizations, paper work, and routine procedures are not ordinarily considered urgent care, and may not be taken care of on the same day as requested. Telemedicine and nurse on call services may also be available. If you have a health emergency that requires you to be seen at a hospital emergency room, go to the hospital listed for your campus under "Clinic Locations." Visits to an emergency room that generate a charge from either TTUHSC or the hospital are your responsibility.
    c. **Student Health Insurance Requirement.**
        i. Per OP 77.19, all students must obtain and maintain health insurance coverage that is Affordable Care Act (ACA) compliant while enrolled at the Texas Tech University Health

Sciences Center (TTUHSC), except those enrolled in a 100% distance program. Link to the list of programs: https://www.ttuhsc.edu/student-life/documents/Programs-Do-Not-Require-Insurance.pdf

1. The term “100% distance program” means the entirety of the degree program is online, with no face to face or onsite academic, research, or clinical component.
2. “Affordable Care Act (ACA) compliant” is defined as coverage which accepts preexisting conditions and meets the criteria of Minimum Value and Essential Health Benefits.
    a. Minimum Value covers at least 60 percent of the total allowed cost of benefits that are expected to be incurred under the plan.
    b. Essential Health Benefits include: hospitalization, ambulatory services, emergency services, maternity and newborn care, mental health and substance abuse treatment, prescription drugs, lab tests, preventative services, pediatric services, rehabilitative and “habilitative” services.

ii. Per OP 77.03, TTUHSC requires that all non-immigrant F-1 students have health insurance coverage as a condition of enrollment. This guarantees that both TTUHSC and the non-immigrant students are in compliance with United States federal regulations and guidelines.

iii. TTUHSC will add the fee for the university sponsored student health insurance plan to students’ tuition and fee accounts each semester at the time they register. Students will have the ability to opt-out of the student health insurance plan by submitting a waiver request if they have qualifying alternative insurance. If the waiver request is approved, the fee will be removed or refunded. If a student has an approved waiver for the fall semester, the approved waiver will carry over to the spring and summer semesters. It is the student’s responsibility to ensure their alternative insurance is active during this time. A new waiver request will be required each fall or the first semester a student begins a program. All information about the university sponsored student health insurance plan can be found on the Office of Student Life website, https://www.ttuhsc.edu/student-life/.

iv. Any student who does not comply with the Student Health Insurance requirement shall be subject to disciplinary action, including cancellation of the student’s registration.

21. **Interprofessional Education.** All TTUHSC students, regardless of school affiliation, will be required to complete the IPE Core Curriculum prior to graduation. The IPE Core Curriculum is composed of two components including successful completion of a non-credit online course (>70% accuracy on all knowledge post-tests) and successful participation in at least one registered IPE learning activity. Failure to complete the IPE Core Curriculum will result in delayed graduation. Students should consult their academic/program advisor and/or school catalog for additional information.

22. **International Programs for Students.** TTUHSC students have the opportunity to participate in immersive international learning experiences. TTUHSC International Programs for Students are intended to advance the global competence of students, ensuring a broad and inclusive approach to healthcare education. Scheduled programs that include participants from multiple health

professions allow students the opportunity to observe and address global health disparities through an interprofessional perspective. Participation in an interprofessional international program may qualify as the institutional requirement of participation in one registered IPE activity.

i. Prior to participation students must meet eligibility requirements and receive the appropriate approval from their school. Students are required to complete a standardized application available through the TTUHSC Office of Global Health. Per OP 10.29, International Programs for Students, International Programs are part of a degree program. As such, schools will determine the course credit being awarded for an International Program in accordance with OP 60.05.

ii. An administrative fee may be collected from students participating in any international program. Students may apply for an International Education Fee Award to help defray some cost of an International Program.

23. **Notification of Student Death.** HSC Student Affairs is the Office of the Chancellor's liaison regarding notification of any student deaths. Schools must notify the Associate Provost for Student Affairs immediately in the event of any student death.

24. **Program of Assistance for Students.** Personal counseling services are available to all TTUHSC students through the Program of Assistance for Students (PAS). Through the PAS, licensed counselors are available to assist students with all types of problems, including stress associated with academic, legal, or financial concerns; depression, anxiety, and/or other emotional problems; family and relationship issues; alcohol and drug abuse; and other mental health and wellness issues. For more information or to request assistance, please call 1-806- 743-1327 or 1-800-327-0328. In after-hours situations, these PAS phone numbers serve as a 24-hour crisis line. In the event of an emergency, the answering service will connect the student with the counselor who is on call. Through PAS, TTUHSC students and their dependents are eligible to receive eight free counseling sessions per year. Additional information about PAS services can be found at https://www.ttuhsc.edu/centers-institutes/counseling/pas.aspx.

25. **Registration**
    a. Registration is coordinated by the Office of the Registrar in cooperation with the School in which the student enrolls. Tuition and fees are payable in full at the time of registration unless other arrangements have been completed. Registration for new students is completed as a step in the orientation process, or with the assistance of the Schools' Student Affairs or Coordinators office.
    b. To be eligible for registration, the student must have been officially admitted as a new student, or officially readmitted following an absence, and must have satisfied all admission requirements, or must be a continuing student who is eligible to continue as a student at the University. Any student deemed ineligible due to academic, administrative or disciplinary sanction will be barred from registration. Students must provide all final transcripts to each school 's Office of Admissions by the end of the first semester in which they are enrolled or a hold will be place- preventing registration in future semesters. *See Student Record and

Transcript Policy located at http://www.ttuhsc.edu/registrar/documents/student.record.transcript.policy.pdf

c. *Late Registration.* Students are expected to register at their earliest opportunity. A student who registers late may be assessed a fee. Consult the Office of the Registrar for deadline dates for registration.

26. **Religious Holy Days**
    a. A student who intends to observe a Religious Holy Day should provide written notice, at the earliest possible date prior to the absence, to the following: (1) the instructor of each affected class and (2) the Director of Student Affairs of their School. A student will be excused from attending class(es), examinations, or other required activities for the observance of a Religious Holy Day, including travel for that purpose. A student whose absence is excused under this section will be allowed to take an examination or complete an assignment within a reasonable time and at the sole discretion of the instructor of record and/or the Director of Student Affairs before or after the absence.
    b. A student who is excused under the above provision may not be penalized for the absence; however, the instructor may appropriately respond if the student fails to satisfactorily complete the missed assignment or examination within the above-stated time.
    c. Any disputes regarding this policy should be submitted in writing to the TTUHSC Provost or their designee. Any decision by the Provost or their designee regarding the dispute shall be final.
    d. This policy does not apply to any student absence for a Religious Holy Day which may interfere with patient responsibilities or patient care.

27. **Remote Examinations**. Remote examinations will be conducted with the assistance of proctoring tools to preserve academic integrity and fairness. Such proctoring tools may include, but are not limited to, the utilization of video and/or audio capabilities to examine, scan, evaluate, and/or monitor you, your work station, associated areas, and surroundings ("Exam Conditions"). By continuing to remain registered in your courses, you consent to these Exam Conditions. If you do not consent or wish to withdraw your consent, please contact the faculty member of your course and other arrangements may be made, such as onsite testing.

28. **Sexual Harassment Policy.** Harassment of students of the basis of sex is a violation of §106.31 of Title IX of the Education Amendments of 1972. Student concerns about sexual harassment which include faculty, staff, or students should be directed to the Title IX Coordinator –University Center 330 A, (806) 743-9861, or TitleIXCoordinator@ttuhsc.edu.

29. **Simulation Program.** The TTUHSC Simulation Program offers interprofessional, multimodality simulation-based learning experiences that mimic realism in healthcare environments. The TTUHSC Simulation Program is composed of the following interprofessional sites: Abilene, Amarillo, Dallas, Lubbock, Mansfield, Midland, and Odessa. In addition, the Simulation Program has contractual locations in Austin and San Antonio. The Simulation Program is accredited by the Society for Simulation in Healthcare in the areas of Teaching/Education and Assessment.
    a. All learners using simulation are encouraged to visit https://www.ttuhsc.edu/simulation/ for more information, as well as review policies at https//www.ttuhsc.edu/simulation/operating-

policiesaspx. It is important learners know simulation experiences are recorded for quality improvement purposes and/or accreditation requirements for assessment.

30. **State Residency Classification.** Students are responsible for registering under the proper residence classification and for providing documentation as required by the institution. If there is any question about the right to classification as a resident of Texas, it is the student's obligation, prior to the time of enrollment, to ask for an official determination by the Office of the Registrar. Non-residents who live in Texas taking only online courses are charged non-resident tuition and fees. An applicant whose classification as a resident of the State of Texas is not clearly established should request a Residency Questionnaire from the Office of the Registrar.

31. **Student Emergency Contact Information.** Students must keep their Emergency Contact Information current. To do so, visit webraider.ttuhsc.edu and sign in. Select the "MyTech (for Students)" tab and look in the "Personal Information" box. Click "Update Emergency Contacts" and fill in your information.

32. Tuition and Fees Installment Payment Options
    a. Texas Education Code, Section 54.007, provides that state-supported institutions of higher education shall provide students with the election to pay tuition and fees during the fall, spring, or long summer semesters in installments. TTUHSC offers the following payment alternatives:
        i. Full payment of tuition and fees in advance of the beginning of the semester; or
        ii. One-half payment of tuition and fees in advance of the beginning of the semester and separate one-fourth payments prior to the sixth and eleventh class weeks, respectively.
    b. TTUHSC shall develop procedures which will provide that students may elect to pay tuition and fees using the payment alternative. Student who elect to pay by installments are required to complete a Financial Responsibility Agreement each semester.
    c. TTUHSC is authorized to establish payment due dates in advance of the beginning of a semester and prior to the sixth and eleventh class weeks respectively so that required payments have been received and student records have been appropriately updated on the dates required by law.
    d. If a student elects to pay tuition and fees using the payment alternative, he or she shall be assessed an installment option fee in addition to the required payment of tuition and fees. The fee developed and recommended for approval shall reflect all costs incurred in operating and handling payments under the installment alternative. The rates of the fee shall be approved by the Board of Regents.
    e. If a student who has elected to pay tuition by installment fails to pay in full all amounts of tuition, other registration fees, installment option fee, late payment fees, and other authorized fees by the end of the business day of the last day of the semester, then he or she will be dropped from School for failure to pay.
    f. TTUHSC shall develop procedures so that students are notified of the requirements, provisions, and penalties of the installment payment options.
    ~~g.~~ For each academic year, the Board of Regents shall approve the assessment of tuition and fees for students of component institutions of the Texas Tech System. The recommended revisions to student tuition and mandatory fee rates shall be presented to the board on a schedule determined by the Provost and Finance Administration.

33. **Tuition and Fees Refund Policies**

a. **Institutional Refund Policy.** Texas Education Code, Section 54.006, provides the amount of tuition and fees to be refunded to students who drop courses or withdraw from the institution. Class day count is based on the official institution calendar for the school, not the specific course dates.

i. Students who drop a course, but remain enrolled at the institution will be refunded at the following rate:

| **Term** | **Class Day** | **Percent of Refund of Charges** |
|---|---|---|
| **Fall, Spring, or Summer – More than 5 weeks but less than 10 weeks in duration** | 1st class day through 4th class day | 100% |
| **Fall, Spring, or Summer – Duration of 10 weeks or longer** | 1st class day through 12th class day | 100% |
| | After 12th class day | None |

ii. Students who withdraw from the institution (zero semester credit hours) are required to pay tuition and fees according to the following schedule based on their official withdrawal date:

| **Term** | **Class Day** | **Percent of Refund of Charges** |
|---|---|---|
| **Fall, Spring, or Summer – More than 5 weeks but less than 10 weeks in duration** | Before the 1st class day | 100% |
| | 1st, 2nd, or 3rd class day | 80% |
| | 4th, 5th, or 6th class day | 50% |
| | 7th class day or later | None |
| **Fall, Spring, or Summer – Duration of 10 weeks or longer** | Before the 1st class day | 100% |
| | 1st five class days | 80% |
| | 2nd five class days | 70% |
| | 3rd five class days | 50% |
| | 4th five class days | 25% |
| | 21st class day and after | None |

b. **Withdrawal from TTUHSC.** It's important for students who receive financial aid and withdraw or drop all courses during the term to be aware of the refund policies and to understand the impact they will have on the aid released and the continued financial aid eligibility. Current refund policies for students who withdraw or drop all courses during a term are determined by the Higher Education Title IV refund regulations.

Federal Refund and Repayment calculations must be performed for students who receive Title IV (Pell, FSEOG, and/or Federal Direct Loans) funds and officially withdraw from all courses, drop out of all courses, are expelled, take an unapproved leave of absence, or fail to return from an approved leave of absence prior to the 60% date of the term. All "unearned aid" must be returned to the federal aid programs as determined by the Federal Refund and Repayment calculations.

i. The requirements for Title IV program funds are separate from the university refund policy. As such, you are responsible for unpaid institutional charges remaining after

the refund calculation. You are also responsible for charges/ balances created by the returning of Title IV program funds that the school was required to return.

ii. If you have questions about your Title IV program funds, you can call the Federal Student Aid Information Center at 1-800-4-FEDAID (1-800-433-3243). TTY users may call 1-800-730-8913. Information is also available on Student Aid on the Web at www.studentaid.ed.gov.

c. **Title IV Funds.** In order to keep all the Title IV financial aid issued in each term, students must be enrolled for more than 60% of the term. After this point in the term, students have earned 100% of the Title IV funds released for the term. Therefore, it is in your best interest to maintain attendance and complete at least one class each term that you receive federal aid to avoid repayment of funds.

How the calculation works:

i. Number of days attended ÷ Days in semester = % of semester completed
ii. Total $ disbursed X % completed = Earned $
iii. Total $ disbursed – Earned $ = $ to be returned

Once it is determined that you owe money back to any of the federal aid programs, you will be ineligible to receive further federal aid at TTUHSC or any other institution, until this debt is cleared.

To remain eligible for financial aid, a student must maintain satisfactory academic progress (SAP). This evaluation process is comprised by three standards; qualitative, quantitative, and maximum time frame. This determination must be made at least once per year. This evaluation process may be different for different schools at the HSC. For more information and school specific SAP information, please visit: https://www.ttuhsc.edu/financial-aid/eligibility.aspx

i. Qualitative – grade point average on hours attempted
ii. Quantitative – hours successfully completed based on hours enrolled. As a general rule, a student must successfully pass 67% of the hours they attempt (hours as of census date).
iii. Maximum Time Frame – students may not attempt more than 150% of the required program hours (or years for medical students) to complete their degree program.

34. **Veterans Resource Center.** The mission of the VRC at TTUHSC is to support our Values-Based Culture and assist veterans and military families in achieving academic, personal, and professional success. The VRC serves as a resource to connect veterans and military families to the University and surrounding communities. The VRC also oversees the certification of state and federal benefits such as:

a. Hazlewood Act, a State of Texas benefit that provides qualified veterans, spouses, and dependent children with an education benefit of up to 150 hours of tuition exemption.
b. VA education and training benefits through the Department of Veterans Affairs (VA) who provide various benefits to help eligible veterans, servicemembers, and qualified family members with paying college tuition, finding a school or program, and career counseling.

Connect with the VRC by visiting https://www.ttuhsc.edu/veterans-resource-center/.

# PART XI. STUDENT COMPLAINT/GRIEVANCE POLICIES AND PROCEDURES

The following narrative summarizes TTUHSC's student complaint or grievance policies and procedures. Links to specific policies and procedures are provided on the HSC Student Affairs website.

It is the policy of the Texas Tech University Health Sciences Center to affirm the right of its students to a prompt and fair resolution of a complaint or grievance involving allegations of inappropriate behavior by other TTUHSC students or by TTUHSC personnel toward students. Policies and procedures exist for the following areas of student complaints:

- Complaints regarding the general or academic misconduct of another student
- Complaints regarding discrimination
- Complaints regarding student records
- Complaints regarding employment at TTUHSC
- Complaints regarding grades or grading
- Complaints regarding other types of mistreatments
- Other institutional-level student complaint procedures

## A. GENERAL OR ACADEMIC MISCONDUCT OF A STUDENT

Policies and procedures governing complaints regarding the general or academic misconduct of students are defined in the Code of Professional and Academic Conduct (Student Code), which is published as Part II of this handbook. Students, faculty, and staff are all encouraged to report violations of the Student Code in accordance with the Disciplinary Procedures outlined in the Student Code.

## B. DISCRIMINATION

This handbook identifies several policies intended to ensure the fair and equitable treatment of all members of the university community. The processes for filing complaints are detailed in the TTUHSC Operating Policies and Procedures. The following list identifies key institutional policies governing complaints regarding discrimination:

1. HSC OP 51.04, *Access for Individuals with Disabilities*
2. HSC OP 51.01, *Equal Employment Opportunity Policy and Affirmative Action Plan*

## C. STUDENT RECORDS

HSC OP 77.13, *Student Education Records*, provides detailed information about filing complaints relating to student records.

## D. TTUHSC EMPLOYMENT

Information about employment grievances for students who are employed at TTUHSC is provided in HSC OP 70.10, *Non-faculty Employee Complaint and Grievance Procedures*. This policy covers complaints concerning issues

pertaining to wages, hours, working conditions, performance evaluations, merit raises, job promotions, job assignments, or similar matters involving management decisions concerning the employee.

## E. Grades/Grading

The processing of formal grade appeal procedures is the responsibility of the school which administers the course. Relevant school policies are listed below:

1. School of Health Professions: SHP OP ST.03 Academic Grade Appeal (link to: https://hscweb.ttuhsc.edu/health-professions/current/policies.aspx)
2. School of Medicine–Lubbock: Student-Faculty Dispute Resolution Policy, Grading Policy, Promotions Policy, and policies and procedures for Challenging Student Records or Grades
3. School of Nursing: Academic Grade Challenges/Appeals
4. Jerry H. Hodge School of Pharmacy: Grade Grievance Resolution
5. Graduate School of Biomedical Sciences: Complaint Policy
6. Julia Jones Matthews Population and Public Health: Complaint Grade Appeal

## F. Other Types of Mistreatments

1. Students who feel that they have been mistreated in a manner that is not directly addressed by any of the specific policies identified above are encouraged to refer to the policies and procedures governing student complaints, grievances, and appeals within their school. Relevant school policies include the following:
    a. School of Health Professions: SHP Student Policies: https://hscweb.ttuhsc.edu/health-professions/current/policies.aspx. *SHP OP: ST.03 Academic Grade Appeal and SHP OP: ST.19 Non-Grade Grievance Policy*
    b. School of Medicine–Lubbock: Student-Faculty Dispute Resolution Policy, Student-Student Dispute Resolution Policy, Part IV Anti-Discrimination and Title IX,
    c. School of Nursing: Academic Grade Challenges/Appeals and Complaint or Grievance Resolution (Non-Grade Grievance)
    d. Jerry H. Hodge School of Pharmacy: Non-Grade Grievance Resolution
    e. Graduate School of Biomedical Sciences: Complaints Policy
    f. Julia Jones Matthews School of Population and Public Health: Non-Grade Grievance Policy
2. Students should process their complaints or appeals through the appropriate channels. Procedures are delineated in the policies identified above. Students are required to bring their concerns to the designated student affairs officer of their school. The student affairs officer in each school is as follows:
    a. School of Health Professions: Associate Dean for Admissions and Student Affairs
    b. School of Medicine-Lubbock: Assistant Dean for Student Affairs
    c. School of Nursing: Associate Dean for Admissions, Student Affairs, and Enrollment Management
    d. Jerry H. Hodge School of Pharmacy: Associate Dean Student Affairs
    e. Graduate School of Biomedical Sciences: Assistant Dean

3. The deans of the schools have final authority in resolving disputes related to academic issues, such as grading and promotion, and in non-academic issues involving the school's faculty and staff.

4. Every effort should be made to resolve complaints against faculty and other school personnel at the school level. If the complaint is about personnel or services at the institutional level, the student is advised to contact TTUHSC Student Affairs in accordance with the following institutional-level student complaint procedures. These procedures are also published on the HSC Student Affairs website.

## G. Other Institutional-Level Student Complaint Procedures

The procedures defined below apply to student complaints that fall outside the scope of other institutional and school- based policies and procedures governing specific types of student complaints (Student Complaint or Grievance Policies and Procedures), including, for example, student complaints against staff members employed at the institutional level or against TTUHSC administrators. TTUHSC Student Affairs will administer this institutional policy and will ensure that due process is afforded to all concerned.

1. **Early Resolution.** Prior to contacting the TTUHSC Office of Student Affairs, the student shall attempt to resolve the issue with the individual(s) involved. If the student is not satisfied with the outcome after meeting with the individual or does not feel comfortable talking to the administrator or staff member involved, the student may contact the Associate Provost for Student Affairs. The student shall address the issue and initiate action under this policy within 30 days of the event-giving rise to the complaint.

   The Associate Provost for Student Affairs may counsel the student to discuss the issue with the involved administrator or staff member. If the student does not feel comfortable talking to the person involved, the Associate Provost for Student Affairs will investigate the complaint, attempt to reconcile differences, and propose a solution. The Associate Provost for Student Affairs will provide a written statement of their recommendation to all parties within ten working days following the initial receipt of the student's report of the complaint. All involved parties will then have ten working days to respond. Every effort should be made to resolve the issue without going beyond this level. The Associate Provost for Student Affairs will attempt to facilitate a resolution before proceeding with a hearing, as described below. (If the complaint is against the Associate Provost for Student Affairs, the student should meet with the Provost or their designee, who will follow the procedures outlined here.)

2. **Filing a Hearing Request.** If the student is not satisfied with the recommendation of the Associate Provost for Student Affairs, he/ she may file a request for a hearing by submitting a written complaint to the Associate Provost for Student Affairs. The hearing request must include a specific statement of the student's complaint, an explanation of what remedy the student seeks, and a copy of the Associate Provost for Student Affairs' recommended resolution.

   If the student files a request for a hearing, a Student Hearing Committee as defined below must convene within 15 working days.

3. **Hearing Procedure.** Upon receipt of a written request for a hearing, the Associate Provost for Student Affairs will appoint a Hearing Committee according to the following procedure:
   a. Each party will propose in writing a list of four TTUHSC faculty, staff, and/or students to serve on the Hearing Committee. The Associate Provost for Student Affairs will contact one person from each list in order of the submitting party's preference to determine the person's willingness to

serve. Through this process, one person will be selected from each list. The two people selected will then select a third member (a TTUHSC faculty or staff member) and these individuals will comprise the Hearing Committee. This group will select a chair from among themselves.

b. The Associate Provost for Student Affairs will provide technical assistance and support to this committee.

c. As soon as the hearing is scheduled, the chair of the Hearing Committee will send a written notice to all involved parties. The notice will specify the time, place, and nature of the hearing, plus a brief description of the complaint. The notice will also confirm the right of all involved parties to present witnesses and evidence and to be accompanied by counsel for advisory purposes only.

d. At least three days prior to the hearing, all parties will provide to the chair of the Hearing Committee and the Associate Provost for Student Affairs a list of the names of any witnesses or counsel who will attend the hearing. If the student will be represented by counsel, the University may be represented by the Office of General Counsel. The student and the involved individuals(s) shall have access to all information to be considered by the Hearing Committee, including the names of all persons giving evidence.

e. The student and the involved parties shall attend the hearing and be offered an opportunity to state their positions and present testimony and other evidence relevant to the case. The responsibility of establishing the validity of the complaint rests with the student.

f. The Hearing Committee chair may keep a recording of the hearing, which shall include date, time, and location of the hearing, names of those present, and any evidence introduced (e.g., records, written testimony, duplicated materials).

4. **Committee Decision**

a. After completion of the hearing, the Hearing Committee shall meet in closed session and prepare a written recommendation. Copies of the Hearing Committee chair's report shall be forwarded to the involved parties within five working days.

b. The appeal must be made, in writing, within three working days, to the Provost or their designee.

c. The Provost or their designee will review the complaint resolution and render a decision within five working days. The decision of the Provost or their designee is final.

d. If the Provost or their designee is serving as a mediator in the case, then the President or their designee will review the complaint resolution and render a decision within five working days. The decision of the President is final.

5. **Complaint Forms.** It is the policy of the Texas Tech University Health Sciences Center to affirm the right of its students to a prompt and fair resolution of a complaint or grievance involving allegations of inappropriate behavior by other TTUHSC students or by TTUHSC personnel towards students.

a. TTUHSC Reporting Forms

i. Academic Misconduct:
https://cm.maxient.com/reportingform.php?TexasTechUnivHSCSS&layout_id=2

ii. Bias or Discrimination:
https://cm.maxient.com/reportingform.php?TexasTechUnivHSCSS&layout_id=4

iii. Campus Security Authority (Clery) Incident:
https://cm.maxient.com/reportingform.php?TexasTechUnivHSCSS&layout_id=30

iv. General Misconduct: https://cm.maxient.com/reportingform.php?TexasTechUnivHSCSS&layout_id=3

v. Sexual Harassment / Sexual Assault / Sexual Misconduct: https://cm.maxient.com/reportingform.php?TexasTechUnivHSCSS&layout_id=10

vi. Student of Concern: https://cm.maxient.com/reportingform.php?TexasTechUnivHSCSS&layout_id=1

# PART XII. CONTACT INFORMATION FOR KEY PERSONNEL

| | |
|---|---|
| HSC Student Affairs | (806) 743-2300 |
| Student Business Services | (806) 743-7867 |
| Student Disability Services | (806) 743-1926 |
| Student Life | (806) 743-2302 |
| Student Financial Aid | (806) 743-3025 |
| Registrar | (806) 743-7347 |
| Graduate School of Biomedical Sciences | (806) 743-2556 |
| School of Health Professions Admissions and Student Affairs | (806) 743-3220 |
| School of Medicine Student Affairs | (806) 743-3005 |
| School of Nursing Student Affairs | (806) 743-3341 |
| Jerry H. Hodge School of Pharmacy Student Affairs | (806) 414-9393 |
| Julia Jones Matthews School of Population and Public Health Student Affairs | (325) 696-0632 |
| Title IX Coordinator for TTUHSC | (806) 743-9861 |